CONFORM AND RETURN

*FILED*

13 JUN 13 PM 3: 56

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIF.
LOS ANGELES

BY: _____

1  Neal R. Marder (SBN: 126879)
   nmarder@winston.com
2  Ian C. Eisner (SBN: 254490)
   ieisner@winston.com
3  WINSTON & STRAWN LLP
   333 South Grand Avenue
4  Los Angeles, CA 90071
   Telephone: 213 615 1700
5  Facsimile: 213 615 1750

6  Attorneys for Plaintiffs
   MJC America, Ltd. dba Soleus
7  International Inc. And MJC
   America Holdings Co., Inc.

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11  MJC America, Ltd. dba Soleus International   Case No.   **CV13-04264 - SJO (CWx)**
    Inc. and MJC America Holdings Co., Inc.,
12                                              PLAINTIFFS' COMPLAINT FOR
               Plaintiffs,                      DAMAGES FOR:
13
        vs.                                     1.  **Breach of Fiduciary Duty**
14                                              2.  **Breach of Contract**
    Gree Electric Appliances, Inc. of Zhuhai,   3.  **Breach of the Implied Covenant of**
15  Hong Kong Gree Electric Appliances Sales        **Good Faith and Fair Dealing**
    Ltd., and Does 1 through 10 ι, inclusive,   4.  **Intentional Interference with**
16                                                  **Prospective Economic Advantage**
               Defendants.                      5.  **Violation of California Business &**
17                                                  **Professions Code §§ 17200** *et seq.*

18                                              **DEMAND FOR JURY TRIAL**

19

20

21        Plaintiffs MJC America, Ltd. dba Soleus International Inc. ("MJC") and MJC

22  America Holdings Co., Inc. ("MJC America Holdings") allege:

23                       **NATURE OF THE ACTION**

24        1.    On April 23, 2010, Plaintiff MJC, a privately-held California-based

25  manufacturer, importer, and distributor of home comfort products under the trade name

26  "Soleus Air," and variations thereof, entered into a joint venture agreement with China-based

27  Defendant Gree Electrical Appliance, Inc. of Zhuhai ("Gree China"), one of the largest

28  manufacturers of air conditioners and household appliances in the world.  The parties created

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1    the joint venture to promote the sale of Defendant Gree China's products in the United States

2    by capitalizing on Plaintiff MJC's well-established marketing, sales, logistical, and after-

3    sales service networks and its significant customer base in the United States, which Plaintiff

4    MJC had worked over a decade to develop.

5         2.    Pursuant to the joint venture agreement, Plaintiff MJC transferred its existing

6    customer accounts – which included The Home Depot, Inc., Lowes Companies, Inc.,

7    Menard, Inc., BJ's Wholesale Club, Inc., and Sears Corp. – to Gree USA, Inc. ("Gree

8    USA"), a corporation formed as part of the joint venture, with 51 percent of its stock owned

9    by Defendant Hong Kong Gree Electrical Appliances Sales Ltd. ("Hong Kong Gree") and

10   the remaining 49 percent owned by Plaintiff MJC America Holdings Co., Inc. ("MJC

11   America Holdings"). The parties agreed that Gree USA would primarily market and sell

12   products manufactured by Defendant Gree China. With respect to certain of these products,

13   including dehumidifiers, the parties further agreed to use the brand name "SoleusAir

14   Powered By Gree." The brand name "Gree" would be reserved for higher-end products and

15   specialty products sold by Gree USA.

16        3.    The combination of Defendant Gree China's manufacturing muscle and

17   Plaintiff MJC's substantial customer base and well-developed marketing, sales, and service

18   networks initially made Gree USA very successful. Indeed, in 2012, Gree USA, which had

19   been formed with an initial capital investment of only $80,000, sold over 1.2 million units of

20   air conditioners and dehumidifiers, with a sales volume of over $150 million.

21        4.    However, in July 2012, after nearly all of Gree USA's orders for that year had

22   been fulfilled and it had already negotiated sales contracts for 2013 in excess of $100

23   million, Plaintiff MJC's customer service department began to receive complaints that the

24   dehumidifiers manufactured by Defendant Gree China and sold by Gree USA were

25   overheating and catching fire.

26        5.    Plaintiff MJC took these complaints seriously and immediately reported them

27   to Defendant Gree China. While Defendant Gree China denied there were any problems, it

28   soon became clear, through numerous independent investigations and tests commissioned by

1  both Plaintiff MJC and third parties, that the dehumidifiers manufactured by Defendant Gree

2  China were both defectively designed and encased in a non-fire retardant plastic.  As a result,

3  in November 2012, Plaintiff MJC informed Defendant Gree China that it would stop selling

4  through Gree USA the defective humidifiers.

5      6.    Defendant Gree China continued to deny that the dehumidifiers suffered from

6  any problems despite overwhelming evidence to the contrary.  It also attempted to pressure

7  Plaintiff MJC to cover-up the mounting customer complaints of overheating and/or fire

8  associated with the dehumidifiers or, at minimum, delay reporting these complaints to the

9  United States Consumer Product Safety Commission ("CPSC").  Plaintiff MJC informed

10  Defendant Gree China that it was obligated  to report these complaints to the CPSC fully and

11  without delay because of, among other reasons, the potential risk of injury or even death to

12  the general public posed by the dehumidifiers at issue.

13      7.    In response, Defendants engaged in a campaign to intimidate Plaintiff MJC and

14  to financially destroy both it and Gree USA in contravention of California law and the joint

15  venture agreement by, among other ways, (i) causing Gree USA customers to terminate their

16  accounts with Gree USA and/or transfer them to Defendant Gree China; (ii) ordering

17  Defendant Gree China's production department to cease manufacturing certain products sold

18  by Gree USA, which has made it impossible for Gree USA to fulfill a significant portion of

19  its confirmed orders for 2013; (iii) demanding that the brand "SoleusAir Powered by Gree"

20  be changed to simply "Gree" with respect to Gree USA's confirmed orders for 2013; (iv)

21  refusing to reimburse Plaintiff MJC for certain operational and other expenses as required by

22  the joint venture agreement; (v) refusing to perform various other obligations pursuant to the

23  joint venture agreement; and (vi) substantially harming the reputation of both Plaintiff MJC

24  and Gree USA.  Defendants' conduct has damaged Plaintiffs in an amount not less than

25  $150,000,000 to be established at trial.

26                          **PARTIES**

27      8.    Plaintiff MJC is and was at all times mentioned herein a California corporation

28  with its principal place of business in California.  Founded in 1998 and privately held by

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

3

three shareholders, MJC imports, distributes, and manufactures, almost exclusively through Original Equipment Manufacturers ("OEMs"), home comfort products, including but not limited to electric space heaters, fans, and dehumidifiers under the trade name "SoleusAir," and variations thereof.

9.      Plaintiff MJC America Holdings is and was at all times mentioned herein a privately held corporation incorporated under the laws of the State of California, having its principal place of business in the State of California.  It was formed for the sole purpose of holding a 49 percent ownership interest in Gree USA.

10.      Plaintiffs are informed and believe, and on that basis allege, that Defendant Gree China is a corporation incorporated under the laws of the People's Republic Of China, has its principal place of business in, and is managed from, Zhuhai, China, and is listed on the China Stock Exchange.  Plaintiffs are further informed and believe, and on that basis allege, that Defendant Gree China, which has over 80,000 employees, including 3,000 in-house engineers, is one of the largest manufacturers of air conditioners and household appliances in the world, with approximately US$16 billion in sales for 2012.  Plaintiffs are also informed and believe, and on that basis allege, that Defendant Gree China's exports have been entirely exempted from government inspections in China and, at all times mentioned herein, Defendant Gree China was believed to maintain a good reputation in China with respect to the quality of its products.

11.      Plaintiffs are informed and believe, and on that basis allege, that Defendant Hong Kong Gree is a wholly owned subsidiary of Defendant Gree China and is incorporated under the laws of Hong Kong.  Plaintiffs are further informed and believe, and on that basis allege, that Defendant Hong Kong Gree's primary function is to serve as an export hub for Defendant Gree China and, at all times, operates at the direction and under the control of Defendant Gree China.  Almost all of Defendant Gree China's international trade goes through Defendant Hong Kong Gree, which had sales totaling approximately US$1 billion in 2012.

12.      Plaintiffs are ignorant of the true names and capacities of the defendants

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

4

1  identified as "Does 1 through 100, inclusive," and therefore sue them by such fictitious

2  names.  Plaintiffs will amend this pleading to allege their true names and capacities when the

3  same are ascertained.

4      13.    Plaintiffs are informed and believe, and on that basis allege, that each "Doe"

5  defendant herein is legally responsible in some manner for the acts and omissions and

6  occurrences herein alleged, and proximately caused damage, as herein alleged, to Plaintiffs.

7  Each reference in this complaint to defendant or a specifically named defendant refers also to

8  all defendants sued under fictitious names.

9      14.    Plaintiffs are informed and believe, and on that basis allege, that at all times

10  mentioned herein, all defendants herein were the agents, employees, servants, and/or

11  representatives of each of the other defendants, and in doing the things hereafter alleged,

12  were acting within the scope and course of their authority as such agents, employees,

13  servants, and/or representatives, and with the permission and consent of each of the other

14  defendants.

15              **JURISDICTION AND VENUE**

16      15.    This Court has jurisdiction of the subject matter of this action by virtue of

17  diversity of citizenship of the sides under 28 U.S.C. Section 1332.  The amount in

18  controversy exceeds $75,000.00, exclusive of interest and costs.  The controversy is between

19  citizens of a state (California), on the one hand, and citizens or subjects of foreign states on

20  the other hand.

21      16.    Venue is proper in this Court and Judicial District pursuant to 28 U.S.C.

22  Sections 1391(b) and 1391(c)), because Defendants have transacted and continue to transact

23  business in this Judicial District to a degree rendering them subject to personal jurisdiction,

24  and in any case are not residents anywhere else in the United States.  In addition, unlawful

25  acts of Defendants have been and are occurring in this District within the jurisdictional limits

26  of this Court.

27              **INTRADISTRICT ASSIGNMENT**

28      17.    Pursuant to this Court's General Orders Nos.  349 and 98-03, this action should

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1  be assigned to the Western Division of the Central District of California, in that all Plaintiffs

2  reside within the geographic limits of the Western Division, and the majority of all claims

3  arose in, or are related to, the Western Division.

**UNDERLYING FACTS**

**A.    The Joint Venture Agreement**

18.    Prior to the formation of Gree USA pursuant to the joint venture agreement, Defendant Gree China functioned as an OEM for several major brands, including General Electric Co., Whirlpool Corp., and AB Electrolux.  For over ten years prior to the formation of Gree USA, Defendant Gree China also functioned as an OEM for Plaintiff MJC.

19.    During the global financial crisis in 2007, both Defendant Gree China and Plaintiff MJC sustained substantial setbacks with respect to their respective North America sales.  As a result, the parties agreed to enter into a joint venture to combine Defendant Gree China's research and development, and manufacturing capacity with Plaintiff MJC's well-established marketing, sales, logistics and after-sales service platform in the United States.

20.    On April 23, 2010, at Zhuhai, China, Defendant Gree China and Plaintiff MJC agreed to and executed a Memorandum of Understanding (a true and correct copy of which is attached hereto as Exhibit A and incorporated herein by reference), which was ratified by the parties conduct and forms the basis of the joint venture agreement (the "Joint Venture Agreement"), pursuant to which the parties agreed, among other things, to the following:

a.    The purpose of the joint venture is to promote the sale of Defendant Gree China's products in the United States;

b.    Formation of Gree USA as the joint venture vehicle, with Defendant Hong Kong Gree owning 51 percent of its shares and Plaintiff MJC America Holdings owning the remaining 49 percent of its shares;

c.    Defendant Hong Kong Gree will designate three directors and Plaintiff MJC will designate two directors to serve on Gree USA's Board of Directors;

d.    Gree USA's officers and/or directors will not be compensated by the joint venture during Gree USA's first two years in existence;

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

e.     The joint venture is responsible only for the major costs associated with order fulfillment (Cost of Goods Sold) and reimbursement to Plaintiff MJC for commissions, administrative costs, and after-sales service costs;

f.     Plaintiff MJC, which has a preexisting business relationship with the majority of the major chain stores in the United States, will transfer its sales accounts to Gree USA;

g.     Gree USA will be permitted to use both Defendant Gree China's and Plaintiff MJC's trademarks;

h.     While Gree USA will be permitted to sell Plaintiff MJC's products, it will primarily sell Defendant Gree China's products;

i.     Defendant Gree China will be responsible for manufacturing and fulfilling sales orders received by Gree USA; and

j.     Defendant Hong Kong Gree will be responsible for setting reasonable prices for products sold by Gree USA.

21.     On April 26, 2010, Gree USA was incorporated as a California corporation. It was capitalized with $80,000.00 in early 2011 and held a grand opening ceremony in City of Industry, California in June 2011.

22.     Gree USA named only four directors: Ms. Ming Zhu Dong (CEO of Defendant Gree China, and Chairperson of Defendant Hong Kong Gree), Mr. Hou Kong Lam, aka Larry Lam (Vice General Manager of Defendant Hong Kong Gree), Mr. Charley Loh (CEO of Plaintiff MJC), and Mr. Jimmy Loh (CFO of Plaintiff MJC).

23.     Gree USA held only one meeting of its Board of Directors, on June 19, 2011. The minutes of that meeting (a true and correct copy of which are attached hereto as Exhibit B and incorporated herein by reference) supplement the terms of the Joint Venture Agreement and reflect the parties' understanding and agreement of, among other things, the following:

a.     To prevent the Gree brand from becoming associated with lower-cost air conditioners in the United States, Gree USA will use the brand and trademark "SoleusAir

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

7

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1  Powered By Gree" for products sold to mass merchants, including window air conditioners

2  and dehumidifiers.  The "Gree" brand will be used for higher-end products and specialty

3  products.

4          b.     Gree China will "fully support" Gree USA by, among other ways, (i)

5  offering the "best prices" on products manufactured by Defendant Gree China and sold by

6  Gree USA; (ii) stopping its solicitation of new United States-based customers and ultimately

7  ceasing to function as an OEM for existing United States-based manufacturers and suppliers

8  other than Gree USA; (iii) foregoing Defendant Gree China's share of profits from the joint

9  venture for the first three years Gree USA is in existence, which share of profits would

10  instead be retained by Gree USA for purposes of marketing and promotional expenses in the

11  United States; (iv) supporting Gree USA's sales by stocking its local warehouses with

12  products manufactured by Defendant Gree China; (v) establishing a bonus incentive for Gree

13  USA based on its sales volume; and (vi) prioritizing Defendant Gree China's development of

14  products suitable for the United States market.

15      24.    By the end of 2011, Defendant Hong Kong Gree and Gree USA agreed that

16  Gree USA and Plaintiff MJC would receive between 14.5% to 17% of gross sale price of

17  goods sold by Gree USA.  Pursuant to the Joint Venture Agreement, Defendant Hong Kong

18  Gree had sole discretion to determine the sale prices for goods sold by Defendant Gree USA.

19  For each major sale, a distribution sheet setting forth the total percentage of gross margin to

20  Gree USA and to Plaintiff MJC, and a breakdown of current payment (the amount to be paid

21  when payment is received) and deferred payment (the payment amount settled periodically

22  between Gree HK and Gree USA) would be created.  Each distribution sheet had to be

23  signed by the officers of Defendant Hong Kong Gree and of Gree USA.

24      25.    Pursuant to the Joint Venture Agreement, Gree USA achieved for its

25  shareholders, including Defendant Gree China, sales growth that, on information and belief,

26  no China-based company in the same industry has ever achieved in the United States market.

27  With an initial capital investment of only $80,000, Gree USA sold, in 2012 (*i.e.,* its first full

28  year of operation), 1.2 million units of air conditioners and dehumidifiers, with a sales

1  volume exceeding $150 million.  By comparison, on information and belief, in the past 15

2  years, Haier Group, the third largest air conditioner and dehumidifier manufacturer in China,

3  has spent hundreds of millions of dollars in the United States and yet its air conditioner and

4  dehumidifier sales volume in the United States in 2012 was less than one-third of Gree

5  USA's sales volume.

6        26.  Pursuant to the Joint Venture Agreement, by the middle of 2012, Plaintiff MJC

7  had transferred to Gree USA all of its major accounts, which included but were not limited to

8  The Home Depot, Inc., Lowes Companies, Inc., Menard, Inc., BJ's Wholesale Club, Inc.,

9  and Sears Corp.  All products sold to those major accounts were now marketed under the

10  "SoleusAir Powered By Gree" brands and trademarks.  Products  sold by Gree USA to major

11  heating, ventilation, and registration distributors in the United States, including RV air

12  conditioners and ductless air conditioners, used the "Gree" brand and trademark.

13  **B.**  **Dehumidifier Quality Issue**

14        27.  In July 2012, after nearly all of Gree USA's orders for that year had been

15  fulfilled and it had already negotiated sales contracts for 2013 in excess of $100 million,

16  Plaintiff MJC's customer service department began to receive complaints that the

17  dehumidifiers manufactured by Defendant Gree China were overheating and catching on

18  fire.  The dehumidifiers in question were sold by Plaintiff MJC beginning in 2010 and by

19  Gree USA since late-2011.

20        28.  Plaintiff MJC took the complaints seriously and reported them immediately to

21  Defendant Gree China.  In addition, Plaintiff MJC requested that Defendant Gree China test

22  the dehumidifiers to determine the cause of the overheating and fires.  Plaintiff MJC also

23  informed Defendant Gree China that the CPSC treats appliance fires very seriously and that

24  manufacturers typically recall dehumidifiers after receiving only a few complaints of

25  products having caught on fire.

26        29.  On or around August 9, 2012, Plaintiff MJC shipped certain of the

27  dehumidifiers that had reportedly overheated and/or caught fire to Defendant Gree China for

28  further investigation.  On or around September 19, 2012, Larry Lam, on behalf of Defendant

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1   Gree China, claimed that Gree USA tested the dehumidifiers at issue and could not duplicate
2   the reported problems.  Larry Lam also dismissed a report by an investigator retained by an
3   insurance company that concluded that Defendant Gree China had manufactured the
4   dehumidifiers at issue using non-fire retardant materials.  Larry Lam claimed that only a
5   small batch of the dehumidifiers manufactured by Defendant Gree China were constructed
6   with non-fire retardant materials and that many major Chinese appliance manufacturers use
7   the same non-fire retardant materials to construct their products.

8        30.    On or around October 10, 2012, Plaintiff MJC requested that Defendant Gree
9   China provide it with a copy of an Underwriters Laboratories ("UL") report that, according
10  to Defendant Gree China, certified that the dehumidifiers at issue were manufactured using
11  flame-retardant materials in compliance with applicable United States safety standards.
12  Retailers generally require that appliance products obtain this certification before agreeing to
13  sell them.  Defendant Gree China refused to provide to Plaintiff MJC the portion of the UL
14  report detailing the materials that Defendant Gree China used to manufacture the sample
15  dehumidifiers it sent to UL for testing.  Plaintiff MJC suspected this might be because
16  Defendant Gree China manufactured the sample dehumidifiers sent to UL using high-grade
17  fire-retardant materials, but, as a cost-cutting measure, used lower-grade non-fire retardant
18  materials to manufacture the dehumidifiers that were actually mass produced and sold.
19  Plaintiff MJC's suspicion was well-founded, as independent testing ultimately demonstrated
20  that the dehumidifiers mass produced by Defendant Gree China were indeed defective.

21       31.    On or around October 30, 2012, Plaintiff MJC sent two new dehumidifiers
22  along with one that overheated to Intertek Testing Services NA, Inc. ("Intertek"), a
23  multinational inspection, product testing, and certification company, to conduct its own tests
24  regarding what was causing the dehumidifiers manufactured by Defendant Gree China to
25  overheat and/or catch fire.  Intertek reported to Plaintiff MJC that there was a design error
26  with respect to the compressor overload protector for smaller capacity dehumidifiers (45
27  pints and smaller). Shortly thereafter, on or around November 23, 2012, Plaintiff MJC
28  informed Defendant Gree China that it would stop selling dehumidifiers of that size.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

1  Defendant Gree China subsequently disputed Intertek's report and demanded that Plaintiff
2  MJC lift its stop-sale order.

3      32.    It was not until February 20, 2013, after Plaintiff MJC's legal counsel
4  requested that Defendant Gree China join Plaintiff MJC in reporting the dehumidifier issues
5  to the CPSC and informed Defendant Gree China of the substantial penalties it could
6  potentially face for its failure to report, that Defendant Gree China agreed to submit a report
7  to the CPSC concerning the dehumidifier problems. However, Defendant Gree China failed
8  to provide to the CPSC all material information concerning the non-fire retardant materials
9  used to manufacture the dehumidifiers at issue.

10     33.    Thereafter, on or around April 9, 2013, Plaintiff MJC sent four randomly
11 selected dehumidifiers manufactured in 2010, 2011, and 2012 to CRT Laboratories, Inc.
12 ("CRT"), a leading failure analysis laboratory, to test the flammability of the plastic used to
13 construct the dehumidifiers. On April 30, 2013, Plaintiff MJC also sent two dehumidifiers
14 manufactured in 2013 to CRT for flammability testing.

15     34.    In a report dated May 10, 2013, CRT concluded that all four units
16 manufactured in 2010, 2011, and 2012 failed to meet the applicable fire retardant material
17 standards. CRT did, however, conclude that the dehumidifiers manufactured in 2013
18 satisfied the applicable fire retardant material standards. This is because, on information and
19 belief, Defendant Gree China upgraded the material used to manufacture the dehumidifiers
20 in 2013, which suggests that Defendant Gree China knew that the dehumidifiers
21 manufactured in 2010 through 2012 were constructed with materials that failed to satisfy
22 applicable fire retardant standards.

23     35.    On or around June 13, 2013, Defendant Gree China issued a stop-sale order on
24 all the humidifiers manufactured from January 2010 through 2012.

25 C.    **Defendants Gree China and Hong Kong Gree's Plan to Destroy Plaintiff MJC's**
26        **Business**

27     36.    As noted above, shortly after Plaintiff MJC's customer service department
28 began receiving complaints in mid-2012 concerning the dehumidifiers manufactured by

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1   Defendant Gree China, Plaintiff MJC demanded that Defendant Gree China rectify the

2   quality and design issues pertaining to the dehumidifiers. Plaintiff MJC also informed

3   Defendant Gree China that it was obligated to report the complaints to the CPSC fully and

4   without delay because of the potential threat of injury or even death posed by the

5   dehumidifiers.  Plaintiff MJC further informed Defendant Gree China that Plaintiff MJC was

6   concerned about damage to its own reputation for integrity and would not cover up the

7   serious problems associated with Defendant Gree China's dehumidifiers.

8        37.    In response, Defendant Gree China, with the cooperation and assistance of

9   Defendant Hong Kong Gree, which operated at Defendant Gree China's direction, embarked

10  on a campaign to intimidate and destroy Gree USA and Plaintiff MJC, which had, pursuant

11  to the Joint Venture Agreement, transferred substantial operational and intellectual property

12  assets to Gree USA, and was now largely reliant on Gree USA for its own success.

13  Specifically, Defendant Gree China engaged in at least the following conduct in

14  contravention of California law and/or the Joint Venture Agreement:

15        a.    In September 2012, Larry Lam, on behalf of Defendant Gree China,

16  informed Plaintiff MJC that top management at Defendant Gree China had ordered

17  Defendant Gree China's production department to cease manufacturing products sold by

18  Gree USA, which has made it impossible for Gree USA to fulfill a significant portion of its

19  confirmed orders for 2013;

20        b.    Larry Lam, on behalf of Defendant Gree China, demanded that the

21  products designated to fill Gree USA's confirmed orders for 2013 use the trademark "Gree"

22  instead of "SoleusAir Powered by Gree" even though the contracts for those orders had

23  already been executed;

24        c.    It refused to perform various of its obligations pursuant to the Joint

25  Venture Agreement, instead insisting that Gree USA assume those obligations.  Gordon

26  Zhang, who was in charge of Defendant Hong Kong Gree's operations in the United States,

27  warned Tracy Wong, the Senior Vice President of both Plaintiff MJC and Gree USA, that

28  Defendant Gree China could and would drive Gree USA out of business if Plaintiff MJC did

1  not accede to Defendant Gree China's demands;

2           d.       Defendant Gree China threatened to withdraw from the joint venture

3  and to dissolve Gree USA.   Specifically, on November 29, 2012,  Lizzy Gao, the Vice

4  Regional Manager of Defendant Gree China, informed Gree USA and Plaintiff MJC that

5  Defendant Gree China would not fill orders pursuant to Gree USA's contracts except with

6  respect to a limited number of retailers, and insisted that Gree USA transfer all other

7  companies' orders back to Plaintiff MJC – an impossibility under the circumstances.

8  Further, in an email dated December 2, 2012, Gordon Zhang, on behalf of Defendant Gree

9  China, told Plaintiff MJC that Defendant Gree China no longer wanted Gree USA's

10  business;

11           e.       Defendant Gree China demanded that Plaintiff MJC transfer all of its

12  resources, employees  and facilities to Gree USA, without compensation or consideration;

13           f.       Defendant Gree China instructed Jian Chen, Gree USA's Chief

14  Financial Officer, to stop paying operational expenses owed to Plaintiff MJC pursuant to the

15  Joint Venture Agreement;

16           g.       Defendant Gree China refused to sign an agreement to pay Gree USA

17  and Plaintiff MJC for their operating expenses for 2014 sales; and

18           h.       Defendant Gree China refused to fill or to replenish its inventory in the

19  United States as was necessary to fulfill Gree USA's confirmed contracts for 2013.

20       38.      In addition to the above, in or around December 2012, Defendant Gree China

21  began to contact Gree USA's customers to solicit sales directly for Defendant Gree China to

22  the detriment of Gree USA and in violation of the Joint Venture Agreement. By way of

23  example:

24           a.       On or around December 19, 2012, Defendant Gree China directly

25  contacted and made price quotations to Interline Brands, Inc., an existing customer of Gree

26  USA, without the knowledge or approval of Gree USA or of Plaintiff MJC, to steer

27  Interline's business away from Gree USA and directly to Defendant Gree China.

28           b.       On or about January 1, 2013, Defendant Gree China directly contacted

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1  Watsco, Inc., another customer of Gree USA, and convinced Watsco to transfer its account
2  from Gree USA to Defendant Hong Kong Gree, again without the knowledge or approval of
3  Gree USA or Plaintiff MJC.

4      39.    In addition, Defendant Gree China sabotaged Gree USA's relationship with
5  Sears Corp. so that, on information and belief, it could do direct OEM business with Sears.

6      40.    Prior to the joint venture and the formation of Gree USA, Plaintiff MJC had
7  invested substantial time and effort, and over $600,000, to obtain the Sears account, which it
8  subsequently transferred to Gree USA pursuant to the Joint Venture Agreement. Due to the
9  efforts of Plaintiff MJC, Gree USA did substantial business with Sears as an incumbent
10  supplier of its OEM products. As a result of this relationship, Gree USA was able to enter
11  into a contract with Sears effective December 15, 2011 (the "Supply Agreement"), pursuant
12  to which Gree USA would serve as Sears' air conditioner and dehumidifier vendor through
13  2015. The anticipated sales volume from this contract exceeded $150 million.

14      41.    However, in or around late-February, 2013, Sears terminated the Supply
15  Agreement. Plaintiff is informed and believes, and on that basis alleges, that Sears'
16  termination of the Supply Agreement was due to the intentional tortious acts of Defendants,
17  in that, among other things:

18      a.    On information and belief, on or around mid-February 2013, and
19  without the knowledge of Plaintiff MJC or Gree USA, Defendant Gree China approached
20  Sears' Hong Kong office seeking information on how to directly contact Sears' headquarters
21  in the United States for purposes of doing OEM business directly with Sears.

22      b.    On information and belief, Defendant Hong Kong Gree, at the behest of
23  Defendant Gree China and in contravention of the Joint Venture Agreement, refused to sign
24  an agreement with Gree USA specifying what percentage of gross profits from Gree USA's
25  sales would be awarded to Gree USA and Plaintiff MJC. This conduct was designed to –
26  and did – substantially impair Gree USA's ability to provide price quotes to Sears under the
27  Supply Agreement.

28      c.    On information and belief, Defendant Hong Kong Gree, again at the

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

14

1  behest of Defendant Gree China and in contravention of the Joint Venture Agreement,

2  provided Gree USA with unreasonably high price quotes for Defendant Gree China's

3  products in an effort to sabotage Gree USA's relationship with Sears.

4      42.    The actions of Defendants Gree China and Hong Kong Gree effectively

5  destroyed Gree USA's business, substantially damaged the trademark "Soleus Air" and

6  variations thereof, and damaged Plaintiff MJC's relationship with its customers, which had

7  taken years to develop.

**COUNT I**

**(AGAINST DEFENDANTS GREE CHINA AND HONG KONG GREE) FOR**

**BREACH OF FIDUCIARY DUTY**

11      43.    Plaintiffs reallege the allegations of Paragraphs 1 through 42 above as if set

12  forth in full herein.

13      44.    The Joint Venture Agreement imposed on Defendant Gree China and its

14  wholly owned subsidiary, Defendant Hong Kong Gree, a fiduciary duty that existed at all

15  times mentioned in this Complaint, and continues to exist.  This duty required, among other

16  things, that Defendants act as trustees of the joint venture assets, and to protect and preserve

17  them until the purpose of the joint venture was accomplished, as well as to refrain from

18  doing anything affirmatively or otherwise to interfere with or to harm the joint venture and

19  its assets.  These duties included but were not limited to refraining from competing with

20  Gree USA for the same business and refraining from stealing existing or prospective

21  business from Gree USA.  The purpose of the joint venture has not been accomplished, and

22  Defendants' duty has not been extinguished.

23      45.    Plaintiffs are informed and believe, and on the basis allege, that Defendants

24  breached their fiduciary duties in multiple ways, including, *inter alia*, as set forth in

25  Paragraphs 37-41 above, by failing to preserve and protect joint venture assets and by

26  engaging affirmatively in the other tortious and unlawful acts set forth above, designed to (a)

27  destroy or substantially weaken the ability of Gree USA to conduct and effectively compete

28  for business, (b) injure their joint venture partner, Plaintiff MJC, and (c) financially benefit

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

15

1  Defendants.

2       46.    As a proximate result of Defendants' breaches of their fiduciary duties,

3  Plaintiffs have suffered damages, including reputational damages and actual damages in the

4  form of lost sales and lost profits, in amount not less than $150,000,000, to be established at

5  trial.

6       47.    Plaintiffs are informed and believe, and on that basis allege, that in doing the

7  things herein alleged, the actions of Defendants constituted conduct intended to cause injury

8  to Plaintiffs and/or were carried on with a willful and conscious disregard of the rights of

9  Plaintiffs, and have subjected and will subject Plaintiffs to cruel and unjust hardship in

10  conscious disregard of their rights, and, therefore, such actions were undertaken with malice

11  and/or oppression, thereby warranting the imposition of punitive damages in an amount

12  appropriate to punish and set an example of Defendants and to deter others from engaging in

13  similar conduct.

14  **COUNT II**

15  **(AGAINST DEFENDANTS GREE CHINA AND HONG KONG GREE) FOR**

16  **BREACH OF CONTRACT**

17       48.    Plaintiffs reallege the allegations of Paragraphs 1 through 47 above as if set

18  forth in full herein.

19       49.    Plaintiffs performed all of their obligations under the Joint Venture Agreement,

20  which constitutes a valid and binding contract.

21       50.    By engaging in the improper and tortious conduct described, *inter alia*, in

22  Paragraphs 37-41 above, Defendants breached the Joint Venture Agreement.

23       51.    As a direct and proximate consequence of Defendants' conduct as alleged

24  herein, Plaintiffs have suffered and will continue to suffer actual damages, including but not

25  limited to lost profits, damages to reputation, exposure to substantial and avoidable liability

26  to third parties, and other damages, all to be established at trial.

27

28

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

## COUNT III

### (AGAINST DEFENDANTS GREE CHINA AND HONG KONG GREE) FOR
### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

52.     Plaintiffs reallege the allegations of Paragraphs 1 through 51 above as if set forth in full herein.

53.     The Joint Venture Agreement imposed upon Defendants a duty of good faith and fair dealing its performance and enforcement of that agreement.  This duty is heightened because Defendants are invested with a discretionary power affecting the rights of Plaintiffs. This duty prohibits Defendants from engaging in any activity interfering with Plaintiffs' rights under the agreement, or depriving them of any other benefits of the agreement.

54.     Plaintiffs are informed and believe that by engaging in the improper and tortious conduct alleged, *inter alia*, in Paragraphs 37-41 herein, Defendants deprived Plaintiffs of the benefits of the Joint Venture Agreement.

55.     As a direct and proximate consequence of Defendants' conduct, Plaintiffs have suffered and will continue to suffer actual damages, including but not limited to lost profits, damages to reputation, exposure to substantial and avoidable liability to third parties, and other damages, all to be established at trial.

## COUNT IV

### (AGAINST DEFENDANTS GREE CHINA AND HONG KONG GREE) FOR
### INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC
### ADVANTAGE

56.     Plaintiff MJC realleges the allegations of Paragraphs 1 through 55 above, as if set forth in full herein.

57.     Plaintiff MJC was involved in valid existing business relationships with its business customers and had worked for over a decade to develop certain of these relationships.  These relationships had, in the past, produced substantial economic benefit to Plaintiff MJC and had a high probability of producing future economic benefit to Plaintiff MJC.

58.     Defendants were aware of Plaintiff MJC's economic relationships with its customers, and indeed such relationships were one of the inducements for Defendants to enter into the Joint Venture Agreement.

59.     Defendants' intentional and tortious acts described in Paragraphs 37-41 were designed to and did disrupt and permanently damage Plaintiff MJC's business relationships with its customers.

60.     Plaintiff MJC is informed and believes, and on the basis of such information alleges, that Defendants' intentional interference with Plaintiff MJC's business relationships with its customers resulted in substantial damages to Plaintiff MJC, and will continue to result in substantial damages to Plaintiff MJC, in an amount to be established at trial.

61.     Plaintiff MJC is informed and believes, and on that basis alleges, that in doing the things herein alleged, the actions of Defendants constituted conduct intended to cause injury to Plaintiff MJC and/or were carried on with a willful and conscious disregard of the rights of Plaintiff MJC, and have subjected and will subject Plaintiff MJC to cruel and unjust hardship in conscious disregard of its rights, and, therefore, such actions were undertaken with malice and/or oppression, thereby warranting the imposition of punitive damages in an amount appropriate to punish and set an example of Defendants and to deter others from engaging in similar conduct.

62.     Defendants' conduct, unless restrained, will continue to threaten to disrupt business relationships between Plaintiff MJC and its customers.  Accordingly,  damages will not completely compensate Plaintiff MJC for the recurring injury to its business relationships.  Thus, Plaintiff MJC additionally seeks, and is entitled to, injunctive relief against Defendants precluding them from continuing to disturb Plaintiff MJC's business relationships.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

18

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

**COUNT V**

**(AGAINST DEFENDANTS GREE CHINA AND HONG KONG GREE) FOR**

**VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17200**

***ET SEQ.***

63.     Plaintiff MJC realleges the allegations of Paragraphs 1 through 62 above, as if set forth in full herein.

64.     Defendants' conduct, as alleged above, constitutes unlawful or unfair business practices under the purview of Section 17200 of the California Business and Professions Code.

65.     As a direct and proximate result of Defendants' conduct, Defendants have received and continue to receive ill-gotten gains, in an amount to be established at trial, that rightfully belong to Plaintiffs by virtue of the facts set forth above.

66.     Unless enjoined from engaging in such unlawful or unfair business practices, Defendants are likely to engage in such acts of unfair or unlawful business practices, to Plaintiffs' great and irreparable injury, for which damages would not afford adequate relief. Accordingly Plaintiffs additionally seek, and are entitled to, injunctive relief against Defendants.

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.     For general damages;

2.     For actual damages in the amount in excess of $150,000,000.00;

3.     For exemplary or punitive damages, as allowed, in an amount sufficient to punish Defendants for their conduct and to set an example;

4.     For incidental damages in an amount according to proof at trial;

5.     For interest on all monetary damages, to the maximum allowed by law;

6.     For appropriate preliminary and permanent injunctive relief, as appropriate;

7.     For costs of suit herein incurred, including attorney's fees as allowed by law; and

//

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

1    8.    For such other, different or further relief as the Court may deem just and

2    proper.

3

4    Dated:  June 13, 2013                          WINSTON & STRAWN LLP

5

6                                                   By:

7                                                        Neal R. Marder
                                                         Ian C. Eisner
8

9                                                   *Attorneys for Plaintiffs*
                                                    *MJC America, Ltd. dba Soleus*
                                                    *International Inc. and MJC*
10                                                  *America Holdings Co., Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

20

**DEMAND FOR JURY TRIAL**

Pursuant to FRCP 38(b), and Local Rule 38-1 of the Central District of California, plaintiff hereby demands trial by jury on all allegations of the Complaint, on which trial by jury may be had.

Dated:  June 13, 2013

WINSTON & STRAWN LLP

By: _____
Neal R. Marder
Ian C. Eisner

*Attorneys for Plaintiffs*
*MJC America, Ltd. dba Soleus*
*International Inc. and MJC*
*America Holdings Co., Inc.*

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

# Exhibit A

## MEMORADUM OF UNDERSTANDING

### Zhu Hai, China

This memorandum of understanding is entered into on April 23, 2010 at Zhuhai, China between Gree Hong Kong Electric Appliances, a subsidiary of Gree Electrical Appliance Inc of Zhuhai (Party A), and MJC Holding Co., Inc., an affiliate of MJC America Ltd. (Party B)

Parties desire to form a joint venture to further sales of Party A's products in the North America, using Party B's expertise and facilities in sales, logistics, and after sales services.

The following are the form and structure of the joint venture, as tentatively agreed by both parties.

1) The legal name of the joint venture will be Gree USA, Inc. It's doing business name is Soleus N.A.
2) The joint venture will be a corporation incorporated in the state of California. The corporation should be formed in late April or early May of 2010.
3) Party A and Party B will own 51% and 49% outstanding common stock of the Gree USA, respectively. The corporation will issue only one class of stock.
4) The initial capital of Gree USA will be $200,000. The initial capital should be deposited into the corporation bank account on or before May 15, 2010.
5) The initial administrative office will be in Greater Los Angeles area. Gree USA will intend to lease an office and initially hire one or two clerical employees in year 2011. Tentatively Gree USA will use the Part's office for company registration.
6) The Party A should appoint 3 directors and Party B should appoint 2 directors for Gree USA. The board of directors should convey meeting at a minimum annually.
7) The Board of Directors of Gree USA should name executive officers of the joint venture.
8) Neither directors nor executive officers will be compensated by Gree USA for the first two years of the joint venture.
9) The mission of Gree USA is to advance sales of Gree residential air conditioner and dehumidifier (including Gree brand) products in United States of America.
10) Gree USA will focus sales to largest chain stores in United States of America initially. And gradually spread its sales to middle and smaller chain stores.
11) Gree USA will use existing sales and marketing force of Party B, to conduct sales presentation to potential customers.
12) Most major chain stores have existing relationship with Party B and its affiliates. Party B will cause the existing accounts with the customers to be transferred to Gree USA.

13) In order to broader product category and continuing existing appearance in front of major chain stores, Gree USA will present both Party A and Party B products in order to increase placement chances.

14) Gree USA should select Party A's products as the primary products and add Party B's as supplemental products for major chain store presentation.

15) Upon receiving orders from major chain stores Party A will fulfill the orders of its product and Party B will fulfill the orders of its products.

16) Gree USA will only incur major costs associated with the order received, fulfilled, and payment received from customers, such as commission to sales company, administrative and after sales services cost to Party B and affiliates.

17) All anticipated costs will added to production costs to determine product presentation prices for a given potential customer.  Party A has power to determine the final product prices for its product.

18) In no event Gree USA should be responsible for any costs associate with marketing, presentation, sales, and after sales services for sales associated with any Party B products.

19) Gree USA will use product brands owned and controlled by either parties, its parents and affiliates, or other brands approved Board of Directors of the company.

Signed by:

GREE ELECTRIC APPLIANCES INC. of ZHUHAI

Name: _Xiandou Cay_

Title: _Vice GM of Gree Overseas Sales Co._

Date: _23 April 2010_


MJC America, Limited

Name: _Vivi C_

Title: _Chairman, Secretary of MJC America Ltd._

Date: _April 23, 2010_

# Exhibit B

Minutes of the Board of Directors Meeting
Of
Gree USA, Inc.
A California Corporation

A meeting of the Board of Directors is held on June 19, 2011 at headquarter of the company at 20035 E. Walnut Dr. North, City of Industry, CA at 10:30 AM. Attending for the meeting are Chairwoman Dong Ming Zhu, Director Jimmy Loh, Director Charley Loh, and Director Lam Hou Kong.

Secretary Jimmy Loh announces the presence of a quorum to conduct businesses for the board of directors.

CEO Charley Loh reports to the Board the sales activities of Gree USA under the PBG (SoleusAir Powered by Gree). He states that the US mass merchants are receptive to PBG brand. And the outlook of Gree USA future is bright.

CEO Charley Loh thanks for the supports that Gree headquarter has been giving to Gree USA.

Chairwoman Dong appraised the hard work of the Gree USA US team to prepare and execute the Grand Opening event. She set her vision for the future direction of Gree USA by stating:

1) Gree headquarter trusts the integrity and ability of the Gree USA management team. She believes that with the researching and development, manufacturing and quality control system of the factory, and the US marketing and sales experiences of MJC, Gree USA can make Gree the largest air conditioner supplier in the US.

2) In order to avoid having Gree brand becoming a cheap air conditioner brand in the US, Gree USA should use PBG for the products sold to the mass merchants. Products sold to mass merchants such as window ACs and dehumidifiers are commodity type of products and have very low profit margins.

3) Gree brand should be used for the products with higher tech content, or certain specialty products which can demand a higher profit margin. After the US consumers recognizes that Gree is a premium brand for air conditioners and dehumidifiers, Gree brand can then be used for products sold to the mass merchants.

4) Gree USA should focus on penetration of the US market by generating sales quantity. Gree USA should generate annual sales of 1 million unit or more within next two years.

5) Gree headquarter will fully support Gree USA by a) offering the best prices. Gree factory only needs to make 1 to 2% of the products sold to Gree USA. b) stop new OEM customers. After Gree USA establishes itself with sales quantity Gree headquarter will stop OEM all together. c) Gree headquarter will not take its share of Gree USA's profits for the first three years. Gree headquarter's portion of profits will be retained by Gree USA for promotion and marketing expenses in the US. d) Gree USA will receive 1.5 to 2% of the sales rebates at the end of a year if its annual sales exceed 1 million units. Gree headquarter has the similar program for its domestic sales companies. f) Gree headquarter will support Gree USA's sales by having local inventories in the US warehouses. Eventually Gree headquarter will consider to invest and acquire warehouses

spaces in the US. g) Gree headquarter is considering investing manufacturing facilities in the US in the future. h) Gree headquarter will place high priority for development of the products suitable for the US market, such as VRFs and central ACs.

6) Gree USA should look into the possibility of opening Gree specialty stores in the US, which only carry and sell Gree products. It is recommended to open the initial Gree specialty stores in the areas where Chinese population are highly concentrated.

Moved by Director Jimmy Loh, seconded by Director Charley Loh, the board approved the following resolutions.

RESOLVED, that Chairwoman Dong Ming Zhu's visions for the company stated to above are hereby adopted as the future direction of the company.

RESOLVED FURTHER that the actions taken since the organization meeting dated October 30, 2010 by the board of directors and management are hereby ratified.

There are no further business and the meeting is adjoined at 11:00 AM.

Prepared and certified to be true and correct minutes of the meeting by:

Jimmy Loh
Secretary

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge S. James Otero and the assigned discovery Magistrate Judge is Carla Woehrle.

The case number on all documents filed with the Court should read as follows:

## CV13- 4264 SJO  (CWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==============================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [x] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**CONFORM AND RETURN**

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )
MJC America, Ltd. dba Soleus International, Inc. and MJC America Holdings Co., Inc.

**DEFENDANTS** ( Check box if you are representing yourself ☐ )
Gree Electric Appliances, Inc. of Zhuhai, Hong Kong Gree Electric Appliances Sales Ltd., and Does 1 through 100, inclusive

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
NEAL R. MARDER
WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071
(213) 615-1700

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff
☐ 2. U.S. Government Defendant
☐ 3. Federal Question (U.S. Government Not a Party)
☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No    ☒ MONEY DEMANDED IN COMPLAINT: $ Greater than 150,000,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. Section 1332

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **TORTS** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | **PERSONAL PROPERTY** | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 370 Other Fraud | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 371 Truth in Lending | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☒ 380 Other Personal Property Damage | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | ☐ 385 Property Damage Product Liability | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | **BANKRUPTCY** | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | **CIVIL RIGHTS** | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 440 Other Civil Rights | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 441 Voting | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 442 Employment | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 445 American with Disabilities-Employment | ☐ 790 Other Labor Litigation | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 791 Employee Ret. Inc. Security Act | |
| | | | ☐ 448 Education | | |

FOR OFFICE USE ONLY: Case Number: **CV13-04264**

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ NO ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ NO ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | People's Republic of China; Hong Kong |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
NOTE: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
**Note:** In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _____  DATE: 6/13/13

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims filed by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

American LegalNet, Inc.
www.FormsWorkFlow.com