STEPHEN J. ERIGERO (SBN 121616)
TAHEREH MAHMOUDIAN (SBN 217120)
**ROPERS, MAJESKI, KOHN & BENTLEY**
445 South Figueroa Street, Suite 3000
Los Angeles, California 90071-1619
Telephone: (213) 312-2000
Facsimile: (213) 312-2001
Email:      serigero@rmkb.com
Email:      tmahmoudian@rmkb.com

Attorneys for Counter-Defendants MJC America, Ltd.
dba Soleus International Inc., MJC America Holdings
Co., Inc., MJC Supply, LLC, Charley Loh, Jimmy Loh
and Simon Chu

NEAL MARDER (SBN 126879)
ALI R. RABBANI (SBN: 253730)
IAN C. EISNER (SBN 254490)
**WINSTON & STRAWN LLP**
333 South Grand Avenue
Los Angeles, California 90071
Telephone: (213) 615-1700
Facsimile: (213) 615-1750
Email:      nmarder@winston.com
Email:      arabbani@winston.com
Email:      ieisner@winston.com

Attorneys for Plaintiffs and Counter-Defendants MJC
America, Ltd. dba Soleus International Inc., MJC
America Holdings Co., Inc. and MJC Supply, LLC and
Counter-Defendants Charley Loh, Jimmy Loh and
Simon Chu

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MJC AMERICA, LTD. dba SOLEUS INTERNATIONAL, INC. and MJC AMERICA HOLDINGS CO., INC., and MJC SUPPLY, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> GREE ELECTRIC APPLIANCES, INC. OF ZHUHAI AND HONG KONG GREE ELECTRIC APPLIANCES SALES LTD., and DOES 1 through 10, Inclusive, <br><br> Defendants. | CASE NO. 13-cv-04264-SJO (CWx) <br><br> **PLAINTIFFS AND COUNTER-DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW** <br><br> Pre-Trial Conference: April 13, 2015 <br> Trial Date: **April 21, 2015** |

*Ropers Majeski Kohn & Bentley*
*A Professional Corporation*
*Los Angeles*

4825-2260-0994.5

**PLAINTIFFS AND COUNTER-DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

GREE ELECTRIC APPLIANCES, INC. OF ZHUHAI AND HONG KONG GREE ELECTRIC APPLIANCES SALES LTD.,

Counterclaimants,

v.

MJC AMERICA HOLDINGS CO., INC., MJC SUPPLY, LLC, CHARLEY LOH, JIMMY LOH and SIMON CHU, and DOES 11-20, Inclusive,

Counter-defendants.

Pursuant to Local Rule 16-4 and the Court's Orders, Plaintiffs and Counter-Defendants MJC America, Ltd. ("MJCA"), MJC America Holdings Co., Ltd. ("MJCH"), and MJC Supply, LLC ("MJCS") (MJCA, MJCS and MJCH will be collectively referred to as "Plaintiffs") and Counter-Defendants Jimmy Loh, Charley Loh, Simon Chu (together with Plaintiffs, "MJC") respectfully submit the following Memorandum of Contentions of Fact and Law, addressing the contentions of the parties as regards to the trial scheduled to commence on **April 21, 2015**.

I.    **INTRODUCTION**

This case arises from a failed joint venture between MJC, a small family-owned marketing, distribution, and after-sales services business operating under the trade name "SoleusAir" on the one hand and Gree, a Chinese government-sponsored conglomerate, one of the largest manufacturers of home appliances in the world with billions of dollars in annual revenues. MJC and Gree formed a joint venture in 2010, Gree USA, wherein it was agreed that Gree would supply dehumidifiers and air conditioners to Gree USA at advantageous prices, and MJC would contribute its marketing wherewithal, distribution network, after-sales service capabilities, and significant know-how of the United States home appliance

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

**PLAINTIFFS AND COUNTER-DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

market. While the venture was a success at first, the venture quickly became strained beginning in the summer of 2012 when MJC began to receive reports of Gree USA dehumidifiers catching on fire. When MJC informed Gree of the problems and its obligation to report any incidents to the Consumer Product Safety Commission ("CPSC"), Gree refused to acknowledge any problem. As evidence continued to mount of hazards and dangers of Gree's dehumidifiers, MJC increased its pressure on Gree to report the problems to the CPSC. Thereafter, Gree systematically sabotaged both Gree USA and MJC.

First, Gree called a September 2012 meeting and acknowledged design and manufacturing issues with the dehumidifiers, but instead of reporting the problems immediately to the CPSC, Gree offered a plan to delay reporting to the CPSC for six to nine months to soften the financial impact to Gree. In early 2013, Gree agreed to indemnify Gree USA for any losses incurred from the sale of its dehumidifiers – a promise Gree had no intention of keeping. When MJC resisted, Gree ceased paying MJC for its operating expenses incurred in operating Gree USA. Gree also stopped supplying Gree USA with products needed to fulfill its contracts to major customers. Gree also offered more advantageous prices to customers of its original equipment manufacturing ("OEM") business than Gree offered to Gree USA/MJC. Finally, Gree infringed on the "SoleusAir" trademark through the unauthorized sale of SoleusAir-branded products.

## II.   MJC'S CLAIMS AND DEFENSES L.R. 16-4.1

MJC initiated this lawsuit on June 13, 2013.  In MJC's operative complaint (the second amended complaint, Dkt. 77), MJC has asserted several claims against Gree, on behalf of itself and derivatively on behalf of Gree USA, including fraud in the inducement, intentional interference with contractual relations and prospective economic advantage, violations of California Business and Professions Code §§ 17200 et seq., breach of contract, promissory estoppel, and trademark infringement and dilution.  In Gree's operative counterclaims against MJC, Gree, on behalf of

itself and derivatively on behalf of Gree USA, asserts claims for breach of fiduciary duty, breach of contract, breach of the duty of good faith and fair dealing, and intentional interference with prospective economic advantage[1]. Jurisdiction is proper under 28 U.S.C. Section 1332, and venue is proper pursuant to 28 U.S.C. Sections 1391(b) and 1391(c).

A.     **PLAINTIFFS' CLAIMS**

1.     **Summary of Plaintiffs' Claims, Elements Required to Establish Those Claims and Key Evidence In Support Thereto [L.R. 16-4.1(a),(b),(c)]**

The Plaintiffs' Second Verified Amended Complaint alleges twelve claims for relief. Plaintiffs seek, among other things, compensatory and punitive damages.

**Claim No. 1: Fraud in the Inducement [By MJCA and MJCS against Gree].**

Summary: Plaintiffs' Second Amended Complaint alleges a claim against Gree for fraud in the inducement.  Throughout these negotiations, including in April 2010, Gree repeatedly asserted to MJC that all products to be sold by Gree USA, including the dehumidifiers, were high quality, met applicable safety standards and were appropriate for sale under the regulatory requirements in the United States, and had significant sales potential. The dehumidifiers were to be the primary product sold by Gree USA and crucial to its success.

Gree sought to benefit from, *inter alia,* the transfer of MJC America's valuable customer accounts to Gree USA and its use of the "SoleusAir" trademark and variations thereof. Gree was aware that the dehumidifiers to be sold by Gree USA, which Gree Zhuhai began manufacturing in late-2009, were manufactured using materials, including a plastic casing, that posed fire hazards, failed to satisfy applicable safety and UL standards in the United States, and ran afoul of the Consumer Products Safety Commission's prohibition on distributing products that

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

---

[1]  Gree's fifth claim in the operative counterclaims (second amended counterclaims) for intentional interference with prospective economic was dismissed by this Court without leave to amend.  [Dkt. 69.]

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1  have design and manufacturing defects that make them substantial product hazards.

2  Gree was well aware of and understood these standards. Further, Gree was in

3  possession of internal documents, including testing reports, which made clear that

4  the dehumidifiers failed to satisfy applicable safety, UL, and CPSC standards.

5  [Dkt. 77, 21:15-23:22].

6      Elements: MJCA and MJCS have the burden of proving that (1) Gree made

7  certain misrepresentations to MJCA and MJCS regarding the quality of Gree's

8  products; (2) Gree made each of these misrepresentations with the intent to induce

9  MJC America to form Gree USA with Gree; (3) Gree made each of these

10 representations with knowledge of their falsity or reckless disregard for the truth

11 when Gree made those representations; (4) MJCA and MJCS reasonably relied on

12 Gree's representations; (5) Gree's representations were not true; (6) MJCA and

13 MJCS were harmed; and (7) MJCA and MJCS reliance on Gree's

14 misrepresentations was a substantial factor in causing their harm.

15     Source: Judicial Council of California Civil Jury Instructions (CACI) 1900,

16 1902, 335.

17     Key Evidence:

18     The key evidence Plaintiffs will introduce includes the following categories

19 of evidence:

20       • Gang Yao's [Gree's head of product development]  Deposition

21         Testimony, 128:12-129:; 129:5-131:10, 165:1-20, 177:8-19

22       • Public information available regarding recall of GE products

23         manufactured by Gree at http://www.cpsc.gov/en/recalls/2011/ge-and-

24         professional-series-brand-dehumidifiers-recalled-due-to-firehazard/;

25       • http://www.cpsc.gov/en/Recalls/2014/Gree-Expands-Dehumidifier-

26         Recall-to-Include-GE-Brand-Dehumidifiers/;

27       • http://www.cpsc.gov/en/Recalls/2013/Gree-Recalls-12-Brands-of-

28         Dehumidifiers

- Documents produced by General Electric pursuant to subpoena, including GE-00002009;
- Deposition testimony of Dong Mingzhu, including but not limited to 38:2-13, 57:25-58:4
- Exhibit 12 to the Deposition of Emma Wu, Transcript of September 19, 2012 Meeting with Translation.
- Exhibit 18 to the Deposition of Dong Mingzhu, E-mail dated 10/13/2012 from Jimmy Loh to Dong Mingzhu re: Gree Massive Recall, with Translation, MJC 0015315.
- Exhibit 1 to the Deposition of H. Hui, Audio Recording of Meeting of 9-19-2012 and Video of SoleusAir Dehumidifier Fire.
- Exhibit 19 to the Deposition of H. Hui, CRT Laboratories, Inc. Test Report re: Dehumidifiers. Gree 0011539 – 0011569
- Exhibit 20 to the Deposition of H. Hui. Exponent – Gree Dehumidifier Investigation dated 7/19/2013. Gree 007263 - 007355

**Claim No. 2 - Intentional Interference with Contractual Relations [By MJCA and MJCS against Gree]**

<u>Summary</u>:  At all relevant times, Gree was aware of Agreement of Distribution and/or the rights and obligations specified therein.

In or around December 2012, Gree began to contact several of Gree USA's major customers [that MJCA and MJCS had transferred to Gree USA after the formation of the joint venture] to solicit sales directly for Gree to the detriment of Gree USA and MJCA and its affiliates. The actions of Gree effectively destroyed Gree USA's business, which had the intended effect of substantially damaging MJCA and MJCS.

By engaging in this conduct, Gree has substantially and intentionally interfered with and disrupted Gree USA's performance of the Agreement of Distribution by, among other ways, driving Gree USA into insolvency and

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

impeding its ability to (i) obtain new customer contracts, and (ii) make required payments to MJCA and MJCS, including payments currently due and owing. This has had the intended effect of substantially damaging both MJCA and MJCS after MJCA had refused to participate in the dehumidifier cover-up.  But for Gree's conduct, Gree USA would have been able to perform its obligations pursuant to the Agreement of Distribution.  [Dkt. 77, 23:23-24:22.]

Elements:  MJCA and MJCS have the burden of proving that (1) That there was a contract between MJCA and MJCS on the one hand and [name third parties] on the other hand; (2)  Gree knew of the contract; (3)  Gree's conduct prevented performance or made performance more expensive or difficult; (4) Gree intended to disrupt the performance of this contract and/or knew that disruption of performance was certain or substantially certain to occur; (5) MJCA and MJCS were harmed; and (6) Gree's conduct was a substantial factor in causing MJCA's and MJCS's harm.

Source: Judicial Council of California Civil Jury Instructions (CACI) 2201 (2015).

Key Evidence:

The key evidence Plaintiffs will introduce includes the following categories of evidence:

- Tyler Scott Deposition Testimony, including but not limited to 171:13-173:12; 173:13-174:3; 161:8-17, 174:4-11;

- Emma Wu Deposition Testimony, including but not limited to 60:16-22, 68:7-20

- Chris Campbell [Watsco's person most knowledgeable] Deposition Testimony, including but not limited to 37:13-20, 47:22-48:12, 53:2-14;

- Exhibit 15 to the Deposition of Jun Ouyang, E-mail dated 4/9/2013 from Jian Chen to Jun Ouyang et al. re: MJC Commission Paid by

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

Gree U.S., Gree 179298 – 179300

- Exhibit 49 to the Deposition of Jian Chen, A Brief Summary of Gree USA Financial Loss till September 30th

- Exhibit 3 to the Deposition of Jian Chen dated 1/8/2015, E-mail w/ Translation dated 4/9/2013 from Jian Chen to Jun Oyang re: MJC Commission Paid by Gree U.S.A. Gree 0179298 – 0179300.

- Exhibit 4 to the Deposition of Jian Chen dated 1/8/2015, E-mail dated 4/18/2013 from Jun Oyang to Jian Chen re: Payment. Gree 0170812 – 0170817.

- Exhibit 12 to the Deposition of Emma Wu, Transcript of September 19, 2012 Meeting with Translation.

- Exhibit 3 to the Deposition of Yao Gang, Gree, Gree's Response to Exponent Compliance Program Report, Gree-OGC 0007984 – 0007986.

- Exhibit 18 to the Deposition of Dong Mingzhu, E-mail dated 10/13/2012 from Jimmy Loh to Dong Mingzhu re: Gree Massive Recall, with Translation, MJC 0015315.

- Exhibit 2 to the Deposition of Heather Ratchford, E-mail dated 6/24/2013 from Heather Ratchford to Lizzy Gao et al. re: Gree Meeting on Tuesday, Gree 0041142 – 0041144.

- Exhibit 2 to the Deposition of Daniel Weiland, Menards Vendor Compliance Program Letter dated 8/24/2012.

- Exhibit 1 to the Deposition of H. Hui, Audio Recording of Meeting of 9-19-2012 and Video of SoleusAir Dehumidifier Fire.

- Exhibit 19 to the Deposition of H. Hui, CRT Laboratories, Inc. Test Report re: Dehumidifiers. Gree 0011539 – 0011569

- Exhibit 20 to the Deposition of H. Hui. Exponent – Gree Dehumidifier Investigation dated 7/19/2013. Gree 007263 - 007355

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

**Claim No. 3 - Intentional Interference with Prospective Economic Advantage [By MJCA and MJCS against Gree]**

Summary:  MJCA and MJCS have a valid existing business relationship with Gree USA whereby MJCA provides, *inter alia*, sales, marketing, and post-sales services for Gree USA in connection with Gree USA's sale of dehumidifiers and other products manufactured by Gree Zhuhai and exported by Hong Kong Gree. In return for these services, Gree USA pays MJCA America, through MJCS, commissions and other payments.  This relationship had produced economic benefit to MJCA and MJCS and was reasonably certain to produce future economic benefit to these entities. Pursuant to Gree USA's Articles of Association, Gree USA is to continue operating for a minimum of 10 years. MJCA would have been uniquely suited to provide sales, marketing, and post-sales services during this period and beyond.

Gree engaged in wrongful conduct, some of which are set forth below:

- On or around September 17, 2012, Gree informed MJCA/MJCS that Dong Mingzhu ordered Gree to stop the production and export of products needed to fulfill Gree USA's 2013 contracts with retailers, which cost Gree USA and the MJC entities millions of dollars;

- Beginning in or around September 2012, Hong Kong Gree stopped processing and paying legitimate sales and other invoices submitted to it by Gree USA;

- On or around November 29, 2012, Lizzy Gao, the Vice Regional Manager of Gree China, informed MJC America that Gree China would not fill orders pursuant to Gree USA's contracts except with respect to a limited number of retailers, and further insisted that Gree USA transfer all other companies' orders back to MJCA – an impossibility under the circumstances;

- On or around December 2, 2012, Gordon Zhang, on behalf of Gree

- 8 -

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

China, informed MJCA that Gree China no longer wanted Gree USA's business;

- In a telephone conference in December 2012, Dong Mingzhu told Jimmy Loh that MJCA's operational infrastructure, including but not limited to, its sales, marketing, and customer service forces, and all of its officers and employees, would need to be immediately transferred to Gree USA without any compensation; and

- Gree demanded that the products designated to fill Gree USA's confirmed orders for 2013 use the trademark "Gree" instead of "SoleusAir Powered by Gree" even though the contracts for those orders had already been executed.

As a result of Gree's wrongful conduct, which was done in retaliation for MJCA's refusal to join Gree in their attempt to conceal the dehumidifier safety issues from the CPSC, among other governmental entities, Gree USA has been substantially damaged, including with respect to its ability to (i) obtain customer contracts, and (ii) pay MJCS Supply for the services performed by MJCA.  [Dkt. 77, 24:24-25:25.]

Elements:  MJCA and MJCS have the burden of proving that (1) MJCA and MJCS and Gree USA were in an economic relationship that probably would have resulted in an economic benefit to MJCA and MJCS; (2) Gree knew of the relationship; (3) Gree engaged in the wrongful conduct described above ; (4) by engaging in this conduct, Gree intended to disrupt the relationship and/or knew that disruption of the relationship was certain or substantially certain to occur; (5) the relationship was disrupted; (6) MJCA and MJCS were harmed;  and (7) Gree's conduct was a substantial factor in causing MJCA's and MJCS's  harm.

Source: Judicial Council of California Civil Jury Instructions (CACI) 2202 (2015).

Key Evidence:

- 9 -

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

The key evidence Plaintiffs will introduce includes the following categories of evidence:

- Larry Lam Deposition Testimony, including but not limited to 95:18-96:4;

- Ex. 9 to the deposition of Gordon Zhang;

- Gordon Zhang Deposition Testimony;

- Wang Jingdong [head of Gree's financial department] Deposition Testimony, including but not limited to 83:20-25, 88:19-89:1- testifying that he was aware that Gree's representative, Larry Lam, had in fact signed these "commission sheets" on behalf of Gree, yet Wang refused to honor the agreements after Lam's "resignation" from Gree because he claimed they were "unreasonable."

- Jian Chen Deposition Testimony (January 8, 2015) testifying that Jun Ouyang, who ultimately assumed Larry Lam's role as Gree's primary contact with Gree USA after Lam resigned, informed Chen in an April 4, 2014 email that these commission payments, which Gree had already agreed to pay, should not be honored because "since [he] took over the business" of Gree USA on behalf of Gree, he personally "never made any commitment" to make those payments to MJC.

- Exhibit 49 to the Deposition of Jian Chen, A Brief Summary of Gree USA Financial Loss till September 30th

- Exhibit 3 to the Deposition of Jian Chen dated 1/8/2015, E-mail w/ Translation dated 4/9/2013 from Jian Chen to Jun Oyang re: MJC Commission Paid by Gree U.S.A. Gree 0179298 – 0179300.

- Exhibit 4 to the Deposition of Jian Chen dated 1/8/2015, E-mail dated 4/18/2013 from Jun Oyang to Jian Chen re: Payment. Gree 0170812 – 0170817.

- Exhibit 12 to the Deposition of Emma Wu, Transcript of September

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

19, 2012 Meeting with Translation.

- Exhibit 3 to the Deposition of Yao Gang, Gree, Gree's Response to Exponent Compliance Program Report, Gree-OGC 0007984 – 0007986.

- Exhibit 12 to the Deposition of Wang Jingdong, E-mail dated 12/21/2012 from Kevin Tsen to Bo Wang et al. re: MJC / Gree – Meeting on 12/18/ 2012, with Translation

- Exhibit 18 to the Deposition of Dong Mingzhu, E-mail dated 10/13/2012 from Jimmy Loh to Dong Mingzhu re: Gree Massive Recall, with Translation, MJC 0015315.

- Exhibit 2 to the Deposition of Heather Ratchford, E-mail dated 6/24/2013 from Heather Ratchford to Lizzy Gao et al. re: Gree Meeting on Tuesday, Gree 0041142 – 0041144.

- Exhibit 2 to the Deposition of Daniel Weiland, Menards Vendor Compliance Program Letter dated 8/24/2012.

- Exhibit 1 to the Deposition of H. Hui, Audio Recording of Meeting of 9-19-2012 and Video of SoleusAir Dehumidifier Fire.

- Exhibit 19 to the Deposition of H. Hui, CRT Laboratories, Inc. Test Report re: Dehumidifiers. Gree 0011539 – 0011569

- Exhibit 20 to the Deposition of H. Hui. Exponent – Gree Dehumidifier Investigation dated 7/19/2013. Gree 007263 - 007355

**Claim No. 4 - Intentional Interference With Prospective Economic Advantage [By MJCH Derivatively On Behalf Of Gree USA]**

Summary: Gree USA was involved in valid existing business relationships with customers that had been transferred to it by MJCA, including relationships with large name brand customers.

These relationships had produced substantial economic benefit to Gree USA and were reasonably certain to produce future economic benefit to Gree USA.

1   Gree was aware of Gree USA's economic relationships with its customers.

2   Gree's intentional and wrongful acts described above, done in retaliation for

3   MJCA's refusal to participate in the dehumidifier cover-up, among other reasons,

4   were designed to and did disrupt and permanently damage Gree USA's

5   relationships with these customers.

6   Gree's intentional interference with Gree USA's business relationships

7   resulted in substantial damages to Gree USA, including the loss of customer

8   accounts such as Watsco and Interline Brands.  [Dkt. 77, 26:1-28.]

9   Elements:  MJCH has the burden of proving that (1) Gree USA was in an

10  economic relationship with several major customers (*e.g.*, Watsco and Interline)

11  that probably would have  resulted in an economic benefit to Gree USA; (2) Gree

12  knew of the relationship; (3) Among other things, Gree engaged in the wrongful

13  conduct described in the complaint (4) by engaging in this conduct, Gree intended

14  to disrupt the relationship and/or knew that disruption of the relationship was

15  certain or substantially certain to occur; (5) the relationship was disrupted; (6) Gree

16  USA was harmed;  and (7) Gree's conduct was a substantial factor in causing Gree

17  USA's  harm.

18  Source: Judicial Council of California Civil Jury Instructions (CACI) 2202

19  (2015).

20  Key Evidence:

21  The key evidence Plaintiffs will introduce includes the following

22  categories of evidence:

23  • Jian Chen Deposition Testimony (January 8, 2015) [including but not

24  limited to 87:10-15, 110:18-113:12]

25  • Jun Ouyang Deposition Testimony

26  • Emma Wu Deposition Testimony

27  • Exhibit 49 to the Deposition of Jian Chen, A Brief Summary of Gree

28  USA Financial Loss till September 30th

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

- Exhibit 3 to the Deposition of Jian Chen dated 1/8/2015, E-mail w/ Translation dated 4/9/2013 from Jian Chen to Jun Oyang re: MJC Commission Paid by Gree U.S.A. Gree 0179298 – 0179300.

- Exhibit 4 to the Deposition of Jian Chen dated 1/8/2015, E-mail dated 4/18/2013 from Jun Oyang to Jian Chen re: Payment. Gree 0170812 – 0170817.

- Exhibit 12 to the Deposition of Emma Wu, Transcript of September 19, 2012 Meeting with Translation.

- Exhibit 3 to the Deposition of Yao Gang, Gree, Gree's Response to Exponent Compliance Program Report, Gree-OGC 0007984 – 0007986.

- Exhibit 12 to the Deposition of Wang Jingdong, E-mail dated 12/21/2012 from Kevin Tsen to Bo Wang et al. re: MJC / Gree – Meeting on 12/18/ 2012, with Translation

- Exhibit 18 to the Deposition of Dong Mingzhu, E-mail dated 10/13/2012 from Jimmy Loh to Dong Mingzhu re: Gree Massive Recall, with Translation, MJC 0015315.

- Exhibit 2 to the Deposition of Heather Ratchford, E-mail dated 6/24/2013 from Heather Ratchford to Lizzy Gao et al. re: Gree Meeting on Tuesday, Gree 0041142 – 0041144.

- Exhibit 2 to the Deposition of Daniel Weiland, Menards Vendor Compliance Program Letter dated 8/24/2012.

- Exhibit 1 to the Deposition of H. Hui, Audio Recording of Meeting of 9-19-2012 and Video of SoleusAir Dehumidifier Fire.

- Exhibit 19 to the Deposition of H. Hui, CRT Laboratories, Inc. Test Report re: Dehumidifiers. Gree 0011539 – 0011569

- Exhibit 20 to the Deposition of H. Hui. Exponent – Gree Dehumidifier Investigation dated 7/19/2013. Gree 007263 - 007355

**Claim No. 5 - Violation of California Business and Professions Code §§ 17200 Et Seq.  [By MJC America and MJC Supply]**

Summary: Gree knowingly sold Gree USA defective dehumidifiers, which posed significant safety hazards, failed to satisfy applicable safety and UL standards in the United States, and ran afoul of the Consumer Products Safety Commission's prohibition on distributing products that have design and manufacturing defects that make them substantial product hazards.

When MJCA encouraged Gree to report the dehumidifier defects to the Consumer Product Safety Commission, Gree refused and retaliated against MJCA and MJCS for refusing to participate in a cover-up of the dehumidifier defects by, among other ways, intentionally interfering with and damaging their contractual and business relationships.  [Dkt. 77, 27:1-28:3.]

Elements: MJCA and MJCS have the burden of proving that Gree engaged in (1) an "unlawful, unfair or fraudulent business act or practice"; (2) that Gree's [retaliatory] conduct occurred in the ordinary course of business.

Source:  Cal. Bus. & Profs. Code §§ 17200, et al.

Key Evidence:

The key evidence Plaintiffs will introduce includes the following categories of evidence:

- Gang Yao's [Gree's head of product development]  Deposition Testimony, 128:12-129:; 129:5-131:10, 165:1-20, 177:8-19
- Public information available regarding recall of GE products manufactured by Gree at http://www.cpsc.gov/en/recalls/2011/ge-and-professional-series-brand-dehumidifiers-recalled-due-to-firehazard/;
- http://www.cpsc.gov/en/Recalls/2014/Gree-Expands-Dehumidifier-Recall-to-Include-GE-Brand-Dehumidifiers/;
- http://www.cpsc.gov/en/Recalls/2013/Gree-Recalls-12-Brands-of-Dehumidifiers

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

**PLAINTIFFS AND COUNTER-DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

- Documents produced by General Electric pursuant to subpoena, including GE-00002009;
- Exhibit 49 to the Deposition of Jian Chen, A Brief Summary of Gree USA Financial Loss till September 30th
- Exhibit 3 to the Deposition of Jian Chen dated 1/8/2015, E-mail w/ Translation dated 4/9/2013 from Jian Chen to Jun Oyang re: MJC Commission Paid by Gree U.S.A. Gree 0179298 – 0179300.
- Exhibit 4 to the Deposition of Jian Chen dated 1/8/2015, E-mail dated 4/18/2013 from Jun Oyang to Jian Chen re: Payment. Gree 0170812 – 0170817.
- Exhibit 12 to the Deposition of Emma Wu, Transcript of September 19, 2012 Meeting with Translation.
- Exhibit 3 to the Deposition of Yao Gang, Gree, Gree's Response to Exponent Compliance Program Report, Gree-OGC 0007984 – 0007986.
- Exhibit 18 to the Deposition of Dong Mingzhu, E-mail dated 10/13/2012 from Jimmy Loh to Dong Mingzhu re: Gree Massive Recall, with Translation, MJC 0015315.
- Exhibit 2 to the Deposition of Heather Ratchford, E-mail dated 6/24/2013 from Heather Ratchford to Lizzy Gao et al. re: Gree Meeting on Tuesday, Gree 0041142 – 0041144.
- Exhibit 2 to the Deposition of Daniel Weiland, Menards Vendor Compliance Program Letter dated 8/24/2012.
- Exhibit 1 to the Deposition of H. Hui, Audio Recording of Meeting of 9-19-2012 and Video of SoleusAir Dehumidifier Fire.
- Exhibit 19 to the Deposition of H. Hui, CRT Laboratories, Inc. Test Report re: Dehumidifiers. Gree 0011539 – 0011569
- Exhibit 20 to the Deposition of H. Hui. Exponent – Gree Dehumidifier

**PLAINTIFFS AND COUNTER-DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

Investigation dated 7/19/2013. Gree 007263 - 007355

**Claim No. 6– Federal Trademark Infringement (15 U.S.C. §§ 1114-1118)**

**[By MJCS against Hong Kong Gree]**

Summary: As part of its ongoing campaign to damage MJC, Hong Kong Gree has willfully infringed on MJC's trademark.

The "SoleusAir" mark is a valuable asset that has been registered with the United States Patent and Trademark Office. This mark applies to air conditioners, portable air conditioners, electric fans, electric tower fans, humidifiers dehumidifiers, household air cleaners, air purifiers, and electric space heaters. In or around May 27, 2009, the rights to the Soleus Air trademark were sold to MJC Supply, which licensed the use of the Soleus Air mark to MJCA.

Gree has been aware of MJC's ownership and use of the Soleus Air mark. However, in its continued effort to destroy MJC, Gree intentionally infringed on the Soleus Air mark by selling products bearing the Soleus Air mark, including but not limited to air conditioners, to certain retailers, suppliers, and/or distributors without the MJC Entities' knowledge or permission. This includes a "Confirmation Letter," dated March 18, 2014, from Hong Kong Gree to Golden Opportunity, Inc. in which Hong Kong Gree purports to authorize Golden Opportunity to "SELL ITS AC INVENTORY FROM US WAREHOUSE ***UNDER SOLEUSAIR BRAND NAME***."

Elements: MJCS has the burden of proving the following elements: (1) that each and every one of the Plaintiffs' claimed trademarks is a valid, protectable trademark; (2) Plaintiff owns each and every one of Plaintiffs' claimed trademarks as a trademark; and (3) Gree used marks without the consent of Plaintiffs in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods.

Source: *See* Ninth Circuit Manual of Model Civil Jury Instructions § 15.5 (2010); 15 U.S.C. § 1114, *Philip Morris USA Inc. v. Liu*, 489 F.Supp.2d 1119,

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

- 16 -

1121-22 (C.D. Cal. 2007) (stating that "claims ... under Sections 32 and 43(a) of the Lanham Act ... are distinct claims [but] the elements are essentially identical.... Liability is established under both Section 32 and Section 43(a) if the plaintiff demonstrates that (1) it owns a valid and protectable trademark, and (2) the defendant used in commerce a similar mark without authorization in a manner likely to cause consumer confusion, deception, or mistake" (citing *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 nn. 6, 8 (9th Cir. 1999)).

Key Evidence:

The key evidence Plaintiffs will introduce includes the following categories of evidence:

- Exhibit 24 to the Deposition of Dong Mingzhu, Letter dated June 14, 2013 from Peter S. Hwu, P.C. to Wang Jing Dong re: Soleus Air Trademark, with Translation.
- March 18, 2014 "Confirmation Letter" from Hong Kong Gree to Golden Opportunity
- Deposition testimony of David Fishman, Person Most Knowledgeable at Golden Opportunity, including but not limited to 17:25-18:4, 41:4-7, 45:6-11, and 53:6-9.

**Claim No. 7 – Federal Unfair Competition (15 U.S.C. § 1125) [By MJCS against Hong Kong Gree];**

Summary: As part of its ongoing campaign to damage MJC, Hong Kong Gree has willfully infringed on MJC's trademark.

The "SoleusAir" mark is a valuable asset that has been registered with the United States Patent and Trademark Office. This mark applies to air conditioners, portable air conditioners, electric fans, electric tower fans, humidifiers dehumidifiers, household air cleaners, air purifiers, and electric space heaters. In or around May 27, 2009, the rights to the Soleus Air trademark were sold to MJC

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

4825-2260-0994.5

- 17 -

1   Supply, which licensed the use of the Soleus Air mark to MJCA.

2       Gree has been aware of MJC's ownership and use of the Soleus Air mark.

3   However, in its continued effort to destroy MJC, Gree intentionally infringed on the

4   Soleus Air mark by selling products bearing the Soleus Air mark, including but not

5   limited to air conditioners, to certain retailers, suppliers, and/or distributors without

6   the MJC Entities' knowledge or permission. This includes a "Confirmation Letter,"

7   dated March 18, 2014, from Hong Kong Gree to Golden Opportunity, Inc. in which

8   Hong Kong Gree purports to authorize Golden Opportunity to "SELL ITS AC

9   INVENTORY FROM US WAREHOUSE ***UNDER SOLEUSAIR BRAND***

10  ***NAME***."

11      Elements: MJCS has the burden of proving the following elements: (1) that

12  each and every one of the Plaintiffs' claimed trademarks is a valid, protectable

13  trademark; (2) Plaintiff owns each and every one of Plaintiffs' claimed trademarks

14  as a trademark; and (3) Gree used marks without the consent of Plaintiffs in a

15  manner that is likely to cause confusion among ordinary consumers as to the

16  source, sponsorship, affiliation, or approval of the goods.

17      Source: *See* Ninth Circuit Manual of Model Civil Jury Instructions § 15.5

18  (2010); 15 U.S.C. § 1114, *Philip Morris USA Inc. v. Liu*, 489 F.Supp.2d 1119,

19  1121-22 (C.D. Cal. 2007) (stating that "claims ... under Sections 32 and 43(a) of the

20  Lanham Act ... are distinct claims [but] the elements are essentially identical....

21  Liability is established under both Section 32 and Section 43(a) if the plaintiff

22  demonstrates that (1) it owns a valid and protectable trademark, and (2) the

23  defendant used in commerce a similar mark without authorization in a manner

24  likely to cause consumer confusion, deception, or mistake" (citing *Brookfield*

25  *Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 nn. 6, 8 (9th Cir.

26  1999)).

27      Key Evidence:

28      The key evidence Plaintiffs will introduce includes the following

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

categories of evidence:

- Exhibit 24 to the Deposition of Dong Mingzhu, Letter dated June 14,2013 from Peter S. Hwu, P.C. to Wang Jing Dong re: Soleus Air Trademark, with Translation.
- March 18, 2014 "Confirmation Letter" from Hong Kong Gree to Golden Opportunity
- Deposition testimony of David Fishman, Person Most Knowledgeable at Golden Opportunity, including but not limited to 17:25-18:4, 41:4-7, 45:6-11, and 53:6-9.

**Claim No. 8 – Trademark Dilution (15 U.S.C. § 1125) [By MJCS against Hong Kong Gree]**

<u>Summary</u>: As part of its ongoing campaign to damage MJC, Hong Kong Gree has willfully infringed on MJC's trademark.

The "SoleusAir" mark is an extremely valuable asset that has been registered with the United States Patent and Trademark Office. This mark applies to air conditioners, portable air conditioners, electric fans, electric tower fans, humidifiers dehumidifiers, household air cleaners, air purifiers, and electric space heaters. In or around May 27, 2009, the rights to the Soleus Air trademark were sold to MJC Supply, which licensed the use of the Soleus Air mark to MJCA.

Gree has been aware of MJC's ownership and use of the Soleus Air mark. However, in its continued effort to destroy MJC, Gree intentionally infringed on the Soleus Air mark by selling products bearing the Soleus Air mark, including but not limited to air conditioners, to certain retailers, suppliers, and/or distributors without the MJC Entities' knowledge or permission. This includes a "Confirmation Letter," dated March 18, 2014, from Hong Kong Gree to Golden Opportunity, Inc. in which Hong Kong Gree purports to authorize Golden Opportunity to "SELL ITS AC INVENTORY FROM US WAREHOUSE ***UNDER SOLEUSAIR BRAND NAME***."

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

4825-2260-0994.5

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1    <u>Elements</u>: MJCS has the burden of proving the following elements: (1) that

2    each and every one of the Plaintiffs' claimed trademarks is a valid, protectable

3    trademark; (2) Plaintiff owns each and every one of Plaintiffs' claimed trademarks

4    as a trademark; and (3) Gree used marks without the consent of Plaintiffs in a

5    manner that is likely to cause confusion among ordinary consumers as to the

6    source, sponsorship, affiliation, or approval of the goods.

7    <u>Source</u>: *See* Ninth Circuit Manual of Model Civil Jury Instructions § 15.5

8    (2010); 15 U.S.C. § 1114, *Philip Morris USA Inc. v. Liu*, 489 F.Supp.2d 1119,

9    1121-22 (C.D. Cal. 2007) (stating that "claims ... under Sections 32 and 43(a) of the

10   Lanham Act ... are distinct claims [but] the elements are essentially identical....

11   Liability is established under both Section 32 and Section 43(a) if the plaintiff

12   demonstrates that (1) it owns a valid and protectable trademark, and (2) the

13   defendant used in commerce a similar mark without authorization in a manner

14   likely to cause consumer confusion, deception, or mistake" (citing *Brookfield*

15   *Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 nn. 6, 8 (9th Cir.

16   1999)).

17   <u>Key Evidence</u>:

18        The key evidence Plaintiffs will introduce includes the following

19   categories of evidence:

20   - Exhibit 24 to the Deposition of Dong Mingzhu, Letter dated June

21     14,2013 from Peter S. Hwu, P.C. to Wang Jing Dong re: Soleus Air

22     Trademark, with Translation.

23   - March 18, 2014 "Confirmation Letter" from Hong Kong Gree to

24     Golden Opportunity

25   - Deposition testimony of David Fishman, Person Most Knowledgeable

26     at Golden Opportunity, including but not limited to 17:25-18:4, 41:4-7,

27     45:6-11, and 53:6-9.

28

**Claims Nos. 9, 11: Breach of Contract [Indemnification Agreement] by MJCS and MJCA against Gree China; Breach of Contract [Indemnification Agreement] by MJCH Holdings Derivatively on behalf of Gree USA against Gree China]**

Summary:  On or around January 23, 2013, Gree entered into an indemnification agreement with Gree USA wherein Gree USA would (i) sell certain dehumidifiers in its stock manufactured by Gree after Gree China had denied that those dehumidifiers "fall under the [United States Consumer Product Safety Commission] requirements for recall or reporting based on safety concerns"; and/or (ii) forebear from exercising its right not to sell such products.

In exchange, Gree agreed to "assume the economic damages and legal responsibilities" of Gree USA in connection with any losses "suffered as a result of the quality issues involving the aforementioned dehumidifiers" in Gree USA's stock. The dehumidifiers manufactured by Gree China and sold by Gree USA are now the subject of a recall mandated by the United States Consumer Product Safety Commission.

Many of Gree USA' retailers thereafter withheld or otherwise offset legitimate amounts owed to Gree USA for their purported losses incurred in connection with the defective dehumidifiers.

On June 18, 2014, Gree USA made a formal demand that Gree China reimburse and/or indemnify Gree USA for the economic damages and losses Gree USA has suffered as a direct result of the dehumidifier quality issues as required under the Gree USA Indemnification Agreement. Such damages exceed $28 million. On or around June 24, 2014, as part of its ongoing campaign to damage Gree USA, Gree China breached the Gree USA Indemnification Agreement by rejecting Gree USA's demand for indemnification despite having been aware of the substantial damages suffered by Gree USA as a direct result of the dehumidifier quality issues.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

4825-2260-0994.5

- 21 -

Elements: MJCS and MJCA has the burden of proving that: (1) That MJCA and MJCS entered into a contract with Gree; (2) that MJCA and MJCS did all, or substantially all, of the significant things that the contract required it to do, or was otherwise excused; (3) that all conditions required by the contract for Gree's performance had occurred; (4) That Gree failed to do what the contract required it to do; and (5) that MJCA and MJCS were harmed by that failure.

Source: CACI 300, 303, VF-300.

Key Evidence:

The key evidence Plaintiffs will introduce includes the following categories of evidence:

- January 23, 2013 Indemnification Agreement
- June 18, 2014 Gree USA demand for indemnification
- June 24, 2014 refusal of indemnification
- Deposition testimony of Dan Weiland, Person Most Knowledgeable at Menard's
- Deposition testimony of Heather Ratchford, Person Most Knowledgeable at Lowe's
- Exhibit 13 to the Deposition of Daniel Weiland, E-mail dated 6/17/2014 from Laura Nguyen to Scott Tyler re: Menard Payment, MJC 0104365 – 0104371.

**Claims Nos. 10, 12 – Promissory Estoppel [MJCA and MJCS against Gree China]; Promissory Estoppel [By MJCH Derivatively on behalf of Gree USA against Gree China]**

Summary: MJCA, MJCS, and Gree USA relied on representations made by Gree relating to the indemnification agreement. But for the indemnification agreement of January 23, 2013, Gree USA would have ceased selling the dehumidifiers manufactured by Gree that became subject to the recall. Gree USA thereafter would not have been subject to payment withholding from its third-party

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

retailers, and MJCS and MJCA would not have been subject to withholding of funds for commissions and operating expenses.

<u>Elements</u>: For the doctrine of promissory estoppel to apply, the plaintiff must establish that: (1) the defendant made a promise--gave assurance, rather than merely engaged in preliminary discussions or negotiations--and the promise was clear and unambiguous in its terms; (2) the plaintiff's reliance on defendant's promise was reasonable (3) the plaintiff suffered substantial detriment as a result of the reliance on defendant's promise or representation; (4) defendant's breach of the promise was a substantial factor in causing injury to the plaintiff

<u>Source</u>: *Southern Cal. Acoustics Co. v. C.V. Holder, Inc.* (1969) 71 Cal. 2d 719, 723, 79 Cal. Rptr. 319, 456 P.2d 975 ;  *Garcia v. World Savings, FSB* (2010) 183 Cal. App. 4th 1031, 1044-1045, 107 Cal. Rptr. 3d 683 (mortgage lender's employee told borrowers in default that if they needed additional time, until specified date, for closing another loan in order to obtain funds for curing default, then employee would postpone foreclosure sale so as to permit borrowers to do that; such statement was sufficiently definite for trial court to determine scope of promise and lender's consequent obligation; fact that promise was conditioned on borrowers' needing additional time did not render it unenforceable or ambiguous)].

<u>Key Evidence</u>:

The key evidence Plaintiffs will introduce includes the following categories of evidence:

- January 23, 2013 Indemnification Agreement
- June 18, 2014 Gree USA demand for indemnification
- June 24, 2014 refusal of indemnification
- Deposition testimony of Dan Weiland, Person Most Knowledgeable at Menard's
- Deposition testimony of Heather Ratchford, Person Most Knowledgeable at Lowe's

**PLAINTIFFS AND COUNTER-DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

- Exhibit 13 to the Deposition of Daniel Weiland, E-mail dated 6/17/2014 from Laura Nguyen to Scott Tyler re: Menard Payment, MJC 0104365 – 0104371.

**2.    Summary of Gree's Affirmative Defenses [L.R. 16.4.1(d)-(e)]**

**Second Affirmative Defense – Estoppel**

Gree has the burden of proving that MJC possessed information regarding Gree's trademark infringement, circumvention of Gree USA to recruit Gree USA customers, and CPSC-related wrongdoing; that MJC, by its silence and/or acquiescence must have intended that its conduct would be acted upon or that Gree had a right to believe that MJC was in agreement with Gree's actions; that Gree was ignorant of the true state of facts of whether MJC intended to challenge those agreements/arrangements; and that Gree relied on MJC's silence as acquiescence.

Key Evidence:

The key evidence Plaintiffs will introduce includes the following categories of evidence:

- E-mails between Charley Loh, Jimmy Loh, Huang Hui, and Dong Mingzhu alerting Gree of dehumidifier-related issues.
- Deposition testimony of Huang Hui acknowledging receipt of CPSC manual.
- Deposition testimony of Wang Jingdong detailing a December 2012 meeting to discuss dehumidifier-related issues.
- Deposition testimony of Emma Wu regarding Gree "breaking the rules" by quoting Gree USA customers prices directly.
- Exhibit 24 to the Deposition of Dong Mingzhu, Letter dated June 14, 2013 from Peter S. Hwu, P.C. to Wang Jing Dong re: Soleus Air Trademark, with Translation.

**Third Affirmative Defense – Unclean Hands**

Gree alleges the affirmative defense of unclean hands. This affirmative

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

defense fails because MJC is not responsible for any wrongdoing. Instead, MJC made every effort to warn Gree of its responsibilities to report issues to the CPSC.

Key Evidence:

- E-mails between Charley Loh, Jimmy Loh, Huang Hui, and Dong Mingzhu alerting Gree of dehumidifier-related issues.
- Deposition testimony of Huang Hui acknowledging receipt of CPSC manual.
- Deposition testimony of Wang Jingdong detailing a December 2012 meeting to discuss dehumidifier-related issues.

**Fourth Affirmative Defense – Fraud (in the Inducement)**

Gree alleges fraud as another affirmative defense. This defense is inapplicable because MJC was truthful and upfront with Gree about the need to report dehumidifier issues to the CPSC. Gree must prove the following: (1) That MJC made a representation to Gree; (2) That MJC knew that the representation was not true; (3) that MJC made the representation to persuade Gree to agree to the contract; (4) that Gree reasonably relied on this representation; and (5) That Gree would not have entered into the contract if it had known that the representation was not true. CACI 1900, 1902, 335.

Key Evidence:

The key evidence Plaintiffs will introduce includes the following categories of evidence:

- Audio recording of September 19, 2012 meeting between Gree and MJC.
- Deposition testimony of Huang Hui acknowledging receipt of CPSC manual.
- E-mails from Jimmy Loh and Charley Loh to Gree requesting payment of MJC operating expenses.

**Fifth Affirmative Defense – Mitigation of Damages**

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

Gree contends that any damages award should be reduced for MJC failing to mitigate damages. Gree has the burden of proving by a preponderance of the evidence: 1) that MJC failed to use reasonable efforts to mitigate damages; and 2) the amount by which damages would have been mitigated. MJC, however, continued on with its business in an attempt to stay solvent. However, the damage MJC suffered as a result of Gree's malfeasance has proven too much to overcome.

Key Evidence:

The key evidence Plaintiffs will introduce includes the following categories of evidence:

- Financial statements of MJC entities.
- Indemnification e-mail from Charley Loh to Dong Mingzhu enumerating payments withheld by third-party retailers.
- Deposition testimony of third-party retailer Persons Most Knowledgeable relating to continued relationships with MJC, as well as withholding of payments to Gree USA.

**Seventh Affirmative Defense – No Damages**

Gree's affirmative defense of no damages is inapposite. MJC has suffered a loss of profits and a reduction of business sufficient enough to cause MJC to file for bankruptcy.

Key Evidence:

The key evidence Plaintiffs will introduce includes the following categories of evidence:

- Financial statements of MJC entities.
- Indemnification e-mail from Charley Loh to Dong Mingzhu enumerating payments withheld by third-party retailers.
- Deposition testimony of MJC employees relating to bankruptcy filings by MJC.

**Tenth Affirmative Defense – Proportionate Fault**

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1  Gree seeks to use proportionate fault as an affirmative defense. However,

2  MJC's actively sought to convince Gree to report the dehumidifier issues to the

3  CPSC.

4  Key Evidence:

5  The key evidence Plaintiffs will introduce includes the following

6  categories of evidence:

7  • E-mails between Charley Loh, Jimmy Loh, Huang Hui, and Dong

8  Mingzhu alerting Gree of dehumidifier-related issues.

9  • Deposition testimony of Huang Hui acknowledging receipt of CPSC

10  manual.

11  • Deposition testimony of Huang Hui acknowledging that Gree reported

12  the dehumidifier issues to the CPSC after MJC gave it an "ultimatum."

13  • Deposition testimony of Wang Jingdong detailing a December 2012

14  meeting to discuss dehumidifier-related issues.

15  **Thirteenth Affirmative Defense – Consent and/or Ratification**

16  Gree has the burden of proving that MJC possessed information regarding

17  Gree's trademark infringement, circumvention of Gree USA to recruit Gree USA

18  customers, and CPSC-related wrongdoing; that MJC, by its silence and/or

19  acquiescence must have intended that its conduct would be acted upon or that Gree

20  had a right to believe that MJC was in agreement with Gree's actions; that Gree was

21  ignorant of the true state of facts of whether MJC intended to challenge those

22  agreements/arrangements; and that Gree relied on MJC's silence as acquiescence.

23  Key Evidence:

24  The key evidence Plaintiffs will introduce includes the following

25  categories of evidence:

26  • E-mails between Charley Loh, Jimmy Loh, Huang Hui, and Dong

27  Mingzhu alerting Gree of dehumidifier-related issues.

28  • Deposition testimony of Huang Hui acknowledging receipt of CPSC

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

manual.

- Deposition testimony of Wang Jingdong detailing a December 2012 meeting to discuss dehumidifier-related issues.
- Deposition testimony of Emma Wu regarding Gree "breaking the rules" by quoting Gree USA customers prices directly.
- Exhibit 24 to the Deposition of Dong Mingzhu, Letter dated June 14, 2013 from Peter S. Hwu, P.C. to Wang Jing Dong re: Soleus Air Trademark, with Translation.

### Fifteenth Affirmative Defense – Misrepresentation

Gree alleges misrepresentation as another affirmative defense. Gree claims that MJC is barred from recovery because the conduct of Gree was the result of misrepresentations made by MJC. This defense is inapplicable because MJC was truthful and upfront with Gree about the need to report dehumidifier issues to the CPSC.

Key Evidence:

The key evidence Plaintiffs will introduce includes the following categories of evidence:

- Audio recording of September 19, 2012 meeting between Gree and MJC.
- Deposition testimony of Huang Hui acknowledging receipt of CPSC manual.
- E-mails from Jimmy Loh and Charley Loh to Gree requesting payment of MJC operating expenses.

### Sixteenth Affirmative Defense – Fraud

Gree alleges fraud as another affirmative defense. This defense is inapplicable because MJC was truthful and upfront with Gree about the need to report dehumidifier issues to the CPSC. Gree must prove the following: (1) That MJC made a representation to Gree; (2) That MJC knew that the representation was

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

not true; (3) that MJC made the representation to persuade Gree to agree to the contract; (4) that Gree reasonably relied on this representation; and (5) That Gree would not have entered into the contract if it had known that the representation was not true. CACI 1900, 1902, 335.

Key Evidence:

The key evidence Plaintiffs will introduce includes the following categories of evidence:

- Audio recording of September 19, 2012 meeting between Gree and MJC.
- Deposition testimony of Huang Hui acknowledging receipt of CPSC manual.
- E-mails from Jimmy Loh and Charley Loh to Gree requesting payment of MJC operating expenses.

**B.    SUMMARY OF GREE'S COUNTERCLAIMS [L.R. 14-4.1(d)-(f)]**

**1.    Summary of Gree's Counterclaims**

**Claims 1 and 4 - Breach of Fiduciary Duty.**

Elements: Gree has the burden of proving that: (1) a fiduciary relationship existed between Gree USA/Gree Hong Kong and MJC by law or contract; (2) MJC failed to act as a reasonably careful fiduciary would have acted under the same or similar circumstances; (3) Gree USA/Gree Hong Kong was harmed, and (4) MJC's conduct was a substantial factor in causing Gree USA/Gree Hong Kong's harm.

Source: CACI 4101.

Key Evidence Against Element No. 2:

The key evidence Plaintiffs will introduce includes the following categories of evidence:

- Audio recording of September 19, 2012 meeting between MJC and Gree.
- E-mails between Charley Loh, Jimmy Loh, Huang Hui, and Dong

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

Mingzhu alerting Gree of dehumidifier-related issues.

- Deposition testimony of Huang Hui acknowledging receipt of CPSC manual.
- Deposition testimony of Wang Jingdong detailing a December 2012 meeting to discuss dehumidifier-related issues.
- Deposition testimony of Gordon Zhang and Jun Oyang acknowledging Gree USA as a "shell company."
- Deposition testimony of third party retailers acknowledging no attempts by MJC to circumvent Gree USA or giving favorable treatment to select retailers.
- Deposition testimony by Emma Wu denying knowledge of MJC favoring select retailers.
- Presentation given to Gree employees during a December 2012 summit meeting

**Claim 2 - Breach of Contract.**

Elements: To recover damages from MJC for breach of contract, Gree must prove all of the following: (1) That Gree and MJC entered into a contract; (2) That Gree did all, or substantially all, of the significant things that the contract required it to do or that it was excused from doing those things; (3) That all conditions required by the contract for Gree's performance had occurred or were excused; (4) that MJC failed to do something that the contract required it to do or that MJC did something that the contract prohibited it from doing; and (5) that Gree was harmed by that failure.

Source: CACI 303.

Key Evidence In Opposition to Element No. 2:

The key evidence Plaintiffs will introduce includes the following categories of evidence:

- Report by Jian Chen explaining losses by Gree USA due to

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

unfavorable pricing offered by Gree.

- Audio recording of September 19, 2012 meeting between MJC and Gree.
- E-mails between Charley Loh, Jimmy Loh, Huang Hui, and Dong Mingzhu alerting Gree of dehumidifier-related issues.
- Deposition testimony of Huang Hui acknowledging receipt of CPSC manual.
- Deposition testimony of Wang Jingdong detailing a December 2012 meeting to discuss dehumidifier-related issues.
- Deposition testimony of Gordon Zhang and Jun Oyang acknowledging Gree USA as a "shell company."
- Deposition testimony of third party retailers acknowledging no attempts by MJC to circumvent Gree USA or giving favorable treatment to select retailers.
- Deposition testimony by Emma Wu denying knowledge of MJC favoring select retailers.
- Account Project Set-up Sheets
- E-mails from Jian Chen to Jun Oyang discussing non-payment of commissions due and owing to MJC
- E-mails from Jian Chen to Larry Lam discussing cancelled purchase orders to Gree USA.

Key Evidence For Element No. 3:

The key evidence Plaintiffs will introduce includes the following categories of evidence:

- Report by Jian Chen explaining losses by Gree USA due to unfavorable pricing offered by Gree.
- Audio recording of September 19, 2012 meeting between MJC and Gree.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

- E-mails between Charley Loh, Jimmy Loh, Huang Hui, and Dong Mingzhu alerting Gree of dehumidifier-related issues.
- Deposition testimony of Huang Hui acknowledging receipt of CPSC manual.
- Deposition testimony of Wang Jingdong detailing a December 2012 meeting to discuss dehumidifier-related issues.
- Deposition testimony of Gordon Zhang and Jun Oyang acknowledging Gree USA as a "shell company."
- Deposition testimony of third party retailers acknowledging no attempts by MJC to circumvent Gree USA or giving favorable treatment to select retailers.
- Deposition testimony by Emma Wu denying knowledge of MJC favoring select retailers.
- Account Project Set-up Sheets
- E-mails from Jian Chen to Jun Oyang discussing non-payment of commissions due and owing to MJC
- E-mails from Jian Chen to Larry Lam discussing cancelled purchase orders to Gree USA.

**Claim 3 – Breach of Duty of Good Faith and Fair Dealing.**

Elements: To establish this claim, Gree must prove all of the following: (1) that Gree and MJC entered into a contract; (2) That Gree did all, or substantially all of the significant things that the contract required it to do or that it was excused from having to do those things; (3) that all conditions required for MJC's performance had occurred or were excused (4) that MJC unfairly interfered with Gree's right to receive the benefits of the contract; and (5) that Gree was harmed by MJC's conduct.

Source: CACI 325.

Key Evidence for Element No. 2:

- 32 -

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

The key evidence Plaintiffs will introduce includes the following categories of evidence:

- Report by Jian Chen explaining losses by Gree USA due to unfavorable pricing offered by Gree.
- Audio recording of September 19, 2012 meeting between MJC and Gree.
- E-mails between Charley Loh, Jimmy Loh, Huang Hui, and Dong Mingzhu alerting Gree of dehumidifier-related issues.
- Deposition testimony of Huang Hui acknowledging receipt of CPSC manual.
- Deposition testimony of Wang Jingdong detailing a December 2012 meeting to discuss dehumidifier-related issues.
- Deposition testimony of Gordon Zhang and Jun Oyang acknowledging Gree USA as a "shell company."
- Deposition testimony of third party retailers acknowledging no attempts by MJC to circumvent Gree USA or giving favorable treatment to select retailers.
- Deposition testimony by Emma Wu denying knowledge of MJC favoring select retailers.
- Account Project Set-up Sheets
- E-mails from Jian Chen to Jun Oyang discussing non-payment of commissions due and owing to MJC
- E-mails from Jian Chen to Larry Lam discussing cancelled purchase orders to Gree USA.

- 33 -

**PLAINTIFFS AND COUNTER-DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

## C.   MJC'S AFFIRMATIVE DEFENSES

**1.   Summary of MJC's Affirmative Defenses in response to Gree's Second Amended Counterclaims [Dkt. 48], Elements Required to Establish Those Claims and Key Evidence In Support Thereto [L.R. 14-4.1(d)], (e) and (f)]**

**First Affirmative Defense – Failure to State a Claim.**

Summary:  MJC contends that the Second Amended Counterclaim and each of the claims against MJC, fails to state facts sufficient to constitute any claim or cause of action upon which relief can be granted.

Elements:  MJC has the burden of proving that the Second Amended Counterclaims does not state facts sufficient to constitute a claim or cause of action by Gree against MJC.

Source: California Code of Civil Procedure §430.10, et seq.

**Second Affirmative Defense – Good Faith/Business Judgment Rule**

Summary:  MJC contends that MJC acted in good faith and used its best business judgment with respect to its conduct in its dealings with Gree.

Elements:  The Business Judgment Rule is codified in California Corporations Code Section 309: "A director shall perform the duties of a director, including duties as a member of any committee of the board upon which the director may serve, in good faith, in a manner such director believes to be in the best interests of the corporation and its shareholders and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances."

Source: California Corporations Code Section 309.

**Third Affirmative Defense – Failure to Mitigate Damages**

Summary:  MJC contends that Gree failed to reasonably mitigate damages and, as a result, any injuries or damages contended to have been suffered by Gree should be reduced accordingly.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1    Elements:  MJC has the burden of proving that if MJC is found responsible

2    for the original harm claimed by Gree, then MJC must prove that Gree could have

3    avoided some or all of the claimed damages through reasonable efforts or

4    expenditures.  A counterclaim plaintiff has a duty to mitigate its damages. Counter-

5    defendants have the burden of showing two elements: (1) that the counterclaim

6    plaintiff failed to use reasonable efforts to mitigate damages; and (2) the amount by

7    which damages would have been mitigated.

8    Source: CACI 358, 3930; Ninth Circuit Model Jury Instruction 5.3.

9    **Fourth Affirmative Defense – Estoppel.**

10   Summary:  MJC contends that by virtue of certain acts, errors and omissions

11   committed or omitted by Gree, Gree is estopped from claiming any damage or

12   injury by virtue of any acts of MJC.

13   Elements:  MJC has the burden of proving that Gree possessed information

14   regarding the Distribution of Profits Agreement/Account Project Set Up Sheets,

15   Board Minutes (volume rebates) and other oral/written agreements and

16   arrangements; that Gree, by its silence and/or acquiescence must have intended that

17   its conduct would be acted upon or that MJC had a right to believe that Gree was in

18   agreement with the distribution of profits as set forth in the Distribution of Profits

19   Agreement, payment of extra/short build-up amounts reflected in the Account

20   Project Set Up Sheets, etc.; that MJC was ignorant of the true state of facts of

21   whether Gree intended to challenge those agreements/arrangements; and that MJC

22   relied on Gree's silence as acquiescence.

23   Source: *Driscoll v. City of Los Angeles*, 67 Cal. 2d 297, 305 (1967); *Simank*

24   *Realty, Inc. v. DeMarco*, 6 Cal. App. 3d 610, 616 (1970); *Safway Steel Products,*

25   *Inc. v. Lefever*, 117 Cal. App. 2d 489, 491 (1953); *In re Marriage of Valle*, 53 Cal.

26   App. 3d 837 (1975).

27   **Fifth Affirmative Defense – Unclean Hands.**

28   Summary:  MJC contends that Gree's claims, and each of them, are barred by

the doctrine of unclean hands.  Gree actively withheld information from MJC that would have lead MJC to alter its position with respect to Gree USA, and subsequently knowingly supplied Gree USA with defective – and indeed dangerous – appliances to sell. Gree's conduct bars it from being able to enforce its claims against MJC.

Elements:  MJC has the burden to prove Gree is barred from enforcing its claims against MJC since Gree acted inequitably, unfairly, or deceitfully in relation to the relief that the Gree seeks in this lawsuit.

Source: *Japan Telecom, Inc. v. Japan Telecom America Inc.*, 287 F.3d 866, 870 (9th Cir. 2002); *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1313 (9th Cir. 1997); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987).

**Sixth Affirmative Defense – Laches.**

Summary:  MJC contends that by reason of laches on the part of Gree, Gree cannot properly maintain its claims.

Elements:  MJC has the burden of proving that Gree unreasonably and inexcusably delayed bringing its action and that either the delay caused prejudice to MJC, or that Gree acquiesced to the conduct about which it complains.  The period of delay is measured from the time that Gree knew or reasonably should have known of the alleged activities on which Gree bases its claims. In deciding whether Gree "should have known" of the claims it is now making, consideration is to be given to whether Gree had knowledge of circumstances that would have made a reasonable person in Gree's position suspicious of the acts and conduct of MJC; and whether inquiring into those circumstances would have led to knowledge of the essential facts giving rise to Gree's claim.

Source: *Magic Kitchen LLC v. Good Things Int'l,* 153 Cal. App. 4th 1144, 1157-58 (2007); *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 68 (2000); and *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1033 (Fed. Cir.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1992).

**Seventh Affirmative Defense – Waiver.**

Summary:  MJC contends that Gree, during the course of the activities described in the Second Amended Counterclaims, and by acts, errors and omissions on its own part, waived the right to claim damage or injury caused by an act or omission of MJC.

Elements:  MJC has the burden of proving that Gree knew of its responsibility to exercise diligence and prudence in its business relationship with MJC, but that Gree freely and knowingly gave up its right to timely challenge any agreements or arrangements between MJC and Gree.

Source: CACI 336.

**Eighth Affirmative Defense – Consent.**

Summary:  MJC contends that Gree, during the course of the activities described in the Second Amended Counterclaims, and by acts, errors and omissions on its own part, consented to acts or omissions of MJC.

Elements:  MJC has the burden of proving that Gree knew of its responsibility to exercise diligence and prudence in its business relationship with MJC, but that Gree freely and knowingly consented to the acts and/or omission of MJC of which now Gree complains.  California Civil Code 3515 provides: "He who consents to an act is not wronged by it."

Source: Civil Code 3515, CACI 336.

**Eighteenth Affirmative Defense - No Punitive Damages**

Summary:  The Second Amended Counterclaims, and each and every claim alleged therein, fails to state facts sufficient to warrant punitive and/or exemplary damages under California Civil Code Section 3294.

Elements: The Requirements of Civil Code Section 3294  not satisfied to impose punitive/exemplary damages.

Source: Civil Code Section 3294.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

**Nineteenth Affirmative Defense – Proportionate Liability**.

<u>Summary</u>:  MJC contends that any injury, damage or loss, if any, sustained by Gree was proximately caused, and contributed-to, by fault on Gree's part and that Gree did not exercise ordinary care in its own behalf at the times and places set forth in the Second Amended Counterclaims.  MJC's liability, if any, for Gree's purported damages, if any, must be reduced by an amount proportionate to Gree's fault.

<u>Elements:</u> MJC has the burden of establishing that Gree was negligent and that Gree's negligence was a substantial factor in causing its harm.

<u>Source</u>: CACI 405.

**Twenty-First and Twenty-Seventh Affirmative Defenses – Fraud.**

<u>Summary</u>:  MJC claims that the Joint Venture Agreement, Articles of Association, and Bylaws are inapplicable because its consent to the agreements was obtained by fraud. Gree misrepresented its appliances as being high-quality, when in actuality it knew that certain defects existed in them that would make them fall below the level of UL compliance. Nevertheless, MJC relied on Gree's representations and formed the joint venture Gree USA. Had MJC been aware of Gree's non-compliant appliances, it never would have formed the venture with Gree.

<u>Elements:</u>  MJC must prove the following: (1) That Gree represented that its products to be sourced to Gree USA were compliant with all relevant United States regulations; (2) That Gree knew that the representation was not true; (3) that Gree made the representation to persuade MJC to agree to the contract; (4) that MJC reasonably relied on this representation; and (5) That MJC would not have entered into the contract if it had known that the representation was not true.

<u>Source</u>: CACI 1900, 1902, 335.

**Twenty-Fourth Affirmative Defense – Intervening or Superseding Events Acts.**

Summary:  MJC contends that the damages sought by Gree were proximately caused or contributed to by acts of other parties, persons or entities, and that these acts were and intervening and superseding cause thus barring Gree from recovery against MJC.

Elements:  MJC has the burden of proving that the harm Gree alleges in its Second Amended Counterclaims was a result of the conduct of Gree, or others. MJC must prove that the conduct of such other parties occurred after the conduct of MJC; that a reasonable person would consider the conduct of the other parties as a highly unusual or an extraordinary response to the situation; that MJC did not know and had no reason to expect that such other parties would act in a negligent or wrongful manner; and that the kind of harm resulting from the conduct of such other parties was different from the kind of harm that could have been reasonably expected from MJC's conduct.

Source: CACI 432, 433, 431; *Akins v. County of Sonoma*, 67 Cal. 2d 185, 199 (1967); *Brewer v. Teano*, 40 Cal. App. 4th 1024 (1995).

**Twenty-Sixth Affirmative Defense  - Misrepresentation**

Summary:  Gree is barred from recovery in this action because any of the conduct of MJC which is alleged to be a breach of any alleged contract was taken as a direct result of misrepresentations made by Gree.

Elements:  (1) Gree made several representations to MJC regarding the joint venture, the distribution of profits, bonuses, the quality of Gree products, etc.;  (2) Those representations were not true; (3) Although Gree may have believed that the representations were true, Gree had no reasonable grounds for believing the representation were true when Gree made it; (4) Gree intended that MJC rely on those representations; (5) MJC reasonably relied on Gree's representations; (6) MJC was harmed; and (7) MJC's reliance on Gree's representation was a

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1  substantial factor in causing MJC's harm.

2      Source:  CACI 1901, 1903.

3      The remaining affirmative defenses relate to Gree's second claim for breach

4  of contract.  All those affirmative defenses tend to show failure of one or more of

5  the elements for establishing a breach of contract claim.  For the sake of brevity, all

6  those affirmative are discussed below:

7      **MJC's Affirmative Defenses to Gree's Breach of Contract Claim**

8      To defeat Gree's claim for damages for breach of contract claim, **it is**

9  **sufficient that MJC negates on of the following elements of the claim**: (1) That

10  Gree and MJC entered into a contract; (2) That Gree did all, or substantially all, of

11  the significant things that the contract required it to do or that it was excused from

12  doing those things; (3) That all conditions required by the contract for Gree's

13  performance had occurred or were excused; (4) that MJC failed to do something

14  that the contract required it to do or that MJC did something that the contract

15  prohibited it from doing; and (5) that Gree was harmed by that failure.

16      Source: CACI 300, 303, 305, 313, 321, 322,330-331.

17      **Ninth Affirmative Defense - Performance Excused or Prevented**

18      Summary:  The counterclaims are barred, in whole or in part, by Gree's own

19  conduct which prevented or excused MJC's performance of the obligations alleged

20  in the Second Amended Counterclaims.

21      **Tenth Affirmative Defense (Failure of Consideration) and Eleventh**

22  **Affirmative Defense (Lack of Consideration)**

23      Summary:  The Second Amended Counterclaims, and each and every claim

24  alleged therein, is barred because Gree failed to perform their obligations under any

25  and all agreements between them and MJC as alleged in the Second Amended

26  Counterclaim.  Further, the breach of contract claim is barred, in whole or in part,

27  due to lack of consideration.

28      **Fourteenth Affirmative Defense - Failure of Conditions Precedent**

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

4825-2260-0994.5

- 40 -

**PLAINTIFFS AND COUNTER-DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

1  Summary:  The second claim for breach of contract is barred because one or

2  more conditions precedent to the performance of MJC under any contract alleged in

3  the Second Amended Counterclaims did not occur, and thus MJC's performance

4  thereunder did not come due.

5  Source: CACI 321, 322; Cal. Civil Code §§ 1434, 1436.

6  **Fifteenth and Sixteenth Affirmative Defenses:** Impracticability of

7  Performance and Impossibility of Performance:

8  Summary:  Any alleged performance owed to Gree under the contracts

9  alleged in the Second Amended Counterclaims has been excused by circumstances

10  rendering it commercially impracticable or impossible for MJC to perform.

11  Elements/Source:  Certain contract defenses such as impracticability and

12  impossibility of performance are decided as questions of law, not as questions of

13  fact. *Oosten v. Hay Haulers Dairy Employees and Helpers Union* (1955) 45 Cal.2d

14  784, 788; *Mitchell v. Ceazan Tires, Ltd.* (1944) 25 Cal.2d 45, 48; *Autry v. Republic*

15  *Productions, Inc.* (1947) 30 Cal.2d 144, 157; *Glen Falls Indemnity Co. v. Perscallo*

16  (1950) 96 Cal.App.2d 799, 802.  The excuse of frustration, like that of

17  impossibility, is a conclusion of law drawn by the court from the facts of a given

18  case." *Mitchell, supra,* 25 Cal.2d at p. 48.

19  **Twenty-Second Affirmative Defense – Offset**

20  Summary:  As part of its affirmative defenses, MJC additionally argues that

21  it is entitled to an offset of all monies owed to MJC. Here, MJC is owed for unpaid

22  commissions and operating expenses. Additionally, MJC is owed for lost profits

23  relating to the loss of the Sears business as well as money being withheld by third

24  party retailers. Finally, MJC was entitled to a sales rebate for exceeding Gree USA

25  sales of 1 million units. These amounts owed to MJC should be applied as an offset.

26  **Twenty-Third Affirmative Defense – No Damages**

27  Summary:  MJC also contends that Gree has not been damaged by any

28  actions of MJC. Gree has suffered no harm as a result of any of MJC's actions and

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1   therefore cannot recover.

2         **Seventeenth Affirmative Defense - Modification**

3       <u>Summary:</u>  The Second Amended Counterclaims, and particularly the second

4   claim for breach of contract, is barred because any contract alleged in the First

5   Amended Counterclaims was subsequently modified by agreement of Gree and

6   MJC.

7       <u>Elements</u>: The parties to a contract may agree to modify its terms. A contract

8   in writing may be modified by an oral agreement to the extent the oral agreement is

9   carried out by the parties.  A contract in writing may be modified by an oral

10   agreement if the parties agree to give each other something of value. An oral

11   contract may be modified by consent of the parties, in writing, without an

12   agreement to give each other something of value.

13       <u>Source</u>:  CACI 313; Cal. Civil Code § 1698.

14          **2.**      **Key Evidence in Support of MJC's Affirmative Defenses to Gree's Corrected Second Amended Counterclaims [L.R. 14-4(f)].**

16       The key evidence MJC will introduce in support of its affirmative defenses

17   includes the following categories of evidence.

18   - Deposition Testimony of Jian Chen, including but not limited to Vol. I
19   at p.37:19-22; 69:21-25, 72:8-73:16; Volume II at p.150:23-151:2,
20   151:14-19

21   - Deposition testimony of Dong Mingzhu, including but not limited to
22   p.44:18-22; 57:25-58:4

23   - Deposition testimony of Larry Lam, including but not limited to p.
24   29:4-12, 47:4-48:13, 63:6-11, 70:10-23; 105:9-15, 106:17-107:9

25   - Deposition testimony of Jun Oyang, including but not limited to 93:24-
26   94:9, 94:14-22;

27   - Deposition testimony of Gordon Zhang, including but not limited to
28   128:14-129:9, 131:6-15, 160:11-15

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

**PLAINTIFFS AND COUNTER-DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

- Deposition Testimony of Wang Jingdong, including but not limited to 78:23-79:11, 97:4-14
- Deposition testimony of Yao Gang, including but not limited to 162:3-8
- Deposition Testimony of Huang Hui, including but not limited to 65:11-66:2, 66:21-68:21
- Deposition testimony of Emma Wu, including but not limited to 33:20-25, 46:11-57:1, 69:18-22
- Deposition Testimony of Lizzy Gao, including but not limited to 94:1-10, 100:11-101:1
- Expert  opening and rebuttal report of MJC's accounting expert Michael Kaplan
- Expert rebuttal report of MJC's Consumer Product Safety Commission expert Alan Schoem.
- Deposition Testimony of Mark Allen, including but not limited to p.14:7-16:3.
- Account Payment Set Up Sheets
- April 23, 2010 Memorandum of Understanding executed between Gree and MJC
- June 19, 2011 Minutes of the Board of Directors Meeting of Gree USA
- Exhibit 4 to the Deposition of Jun Ouyang, Gree USA Sales LTD. Joint Venture Operation Contract, with attached Translation, signed Dong Mingzhu and Jimmy Loh dated 10/30/2010.
- Exhibit 9 to the Deposition of Jun Ouyang, E-mail between Charley Loh and Jimmy Loh dated 9/10/2012 re: Letter to Gree Top Management, with attached Translation,  MJC0015233.
- Exhibit 16 to the Deposition of Jun Ouyang, E-mail dated 9/22/2012 from Manager Huang to Charley Loh with Translation re: Recall,

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

MJC0015247

- Exhibit 18 to the Deposition of Jun Ouyang, Transcription of September 19, 2012 Meeting with Translation.

- Exhibit 10 to the Deposition of Jun Ouyang, E-mail dated 12/21/2012 between Kevin Tsen and Gree re: MJC / Gree Meeting on December 18, 2012, with attached Translation.

- Exhibit 2 to the Deposition of Emma Wu, E-mail dated 8/20/2012 from Larry to Tracy et al. re: After-Sales Service Enhancement, GREE0084677.

- Exhibit 5 to the Deposition of Emma Wu, E-mail dated 8/27/2012, from Bo Chen to Emma Wu et al. re: Follow-up re: Notes on Interline Site Visit and Engineer Meeting, GREE0090844 – 0090850.

- Exhibit 12 to the Deposition of Dong Mingzhu, Agreement of Distribution of Gross Profit of Major Account Sales between Gree USA, and MJC Supply dated 12/9/2011 signed by Charley Loh and Jimmy Loh, with Translation.

- Exhibit 11 to the Deposition of Wang Jingdong, Gree USA Presentation dated 12/18/2012 with Translation

- Exhibit 16 to the Deposition of Wang Jingdong, E-mail dated 4/27/2013 from Charley Loh to Jimmy Loh et al. re: Operating Expenses of MJC, with Translation, MJC 0015040

- Exhibit 5 to the Deposition of Larry Lam, E-mail w/ attachment dated 11/12/2010 from Lizzy Gao to Jimmy Loh and Larry Lam re: Gree USA Articles of Incorporation – need Review and Feedback ASAP. MJC 0011291 – 0011341

- Exhibit 8 to the Deposition of Larry Lam, By Laws of Gree USA, Inc. dated 10/30/2010 signed Jimmy Loh. MJC 0151497 – 0151506

- Exhibit 1 to the Deposition of H. Hui, Audio Recording of Meeting of

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

9-19-2012 and Video of SoleusAir Dehumidifier Fire.

- Exhibit 19 to the Deposition of H. Hui, CRT Laboratories, Inc. Test Report re: Dehumidifiers. Gree 0011539 – 0011569
- Exhibit 20 to the Deposition of H. Hui. Exponent – Gree Dehumidifier Investigation dated 7/19/2013. Gree 007263 - 007355
- Expert testimony of MJC accounting expert Michael Kaplan
- Expert testimony of MJC CPSC expert Alan Schoem

## III.  ANTICIPATED EVIDENTIARY ISSUES [L.R. 16-4.1(H)]

MJC believes the following evidence is inadmissible:

- Gree damages and accounting expert Douglas Anderson will be offering an opinion (Opinion No. 1) based on lost profit damages relating to purported loss of inventory. Because Gree failed to plead this issue in its counterclaims, Opinion No. 1 should be barred.

- Douglas Anderson also will offer an opinion (Opinion No. 5) relating to an "internal analysis" based off computer forensics of documents produced by MJC. This analysis is outside the scope of Mr. Anderson's field of expertise and should not be admitted.

- Mr. Anderson further will be offering Opinion No. 22 as it relates to mitigation. However, his supplemental report offers only a legal conclusion based on MJC's expert reports and should therefore not be admitted.

- Anderson will also be offering opinions upon which he relies on two documents – GREE0404624 and GREE0404629 – which are Excel spreadsheets. These two spreadsheets provide a vast amount of information, but Gree has not provided any backup documentation to support the figures these spreadsheets assert. With no opportunity to conduct further discovery into the accuracy of the figures in GREE0404624 and GREE0404629, Mr. Anderson should not be allowed to rely upon them for his opinions.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

- •       Gree intends to submit evidence of a prior lawsuit involving MJC as it relates to a voluntary recall of certain space heaters. Gree plans to use this evidence to demonstrate that MJC had prior hands-on experience with recalls, and therefore were given primary responsibilities as it relates to the dehumidifier recall. Gree also intends to use this lawsuit as evidence of a devalued "SoleusAir" brand in its defense of MJC's trademark-based claims. However, this evidence is irrelevant and unfairly prejudicial and on that basis should be excluded.

- •       Gree also has indicated that it will submit evidence of disbursements paid from MJC Supply to various MJC employees and third parties. Similarly, Gree plans to enter evidence of an attachment order issued against MJC in a related action pending in California state court. Neither of these pieces of evidence are relevant to the current action and should be barred. Evidence of the attachment order is based on a ruling in a related California state court action, and was made on a preliminary basis without any discovery being conducted. Based on the preliminary nature of the ruling, any such evidence of the attachment would potentially prejudice a jury. Further, evidence of the subsequent disbursements are also irrelevant, as they are based on proper account offsetting. At issue is the propriety of account offsets, not MJC's choices as they relate to disbursements after offsetting. Hence, all information outside the scope of the offset in controversy should be disregarded.

## IV.   IDENTIFICATION OF ISSUES OF LAW [L.R. 16-4.1(I)

Not applicable.  MJC reserves its right to amend its Memorandum of Contentions of Fact and Law to identify issue of law.

## V.   BIFURCATION OF ISSUES [L.R. 16-4.3]

Not applicable.

## VI.   JURY TRIAL [L.R. 16-4.4]

### A.   Issues Triable to the Jury

A timely demand for jury trial has been made. The following issues are

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

triable to the jury:

      1.     The claims by MJC for fraud in the inducement, intentional interference with contractual relations, intentional interference with prospective economic advantage, violation of Bus. & Profs. Code §§ 17200*, et seq.*, federal trademark infringement, federal unfair competition, federal trademark dilution, and breach of contract.

      2.     The counterclaims by Gree for breach of fiduciary duty, breach of contract and breach of duty of good faith and fair dealing.

      3.     All of MJC's affirmative defenses, with the exception of the affirmative defenses identified in the following section as issues triable to the court.

      4.     The amount of damages claimed by the parties.

## VII.  ISSUES TRIABLE TO THE COURT

The following issues are triable to the Court:

      1.     MJC's equitable claims for promissory estoppel.

      2.     MJC's equitable affirmative defenses of waiver, estoppel, latches, unclean hands, impracticability of performance, impossibility of performance, and other equitable affirmative defenses.

      4.     The amount of attorney's fees, if any, Gree and/or MJC may recover.

## VIII.  ATTORNEYS FEES [L.R. 16-4.5]

MJC may be entitled to an award of attorneys' fees and costs in connection with MJC's federal trademark claims and also pursuant to California Code of Civil Procedure Section 1021.5 in connection with violation of Cal. Bus. & Profs. Code §§ 17200, *et seq.*

## IX.  ABANDONMENT OF ISSUES [L.R. 16-4.6]

MJC is abandoning the twentieth affirmative defense of "statute of limitations" asserted in its reply to Counterclaims [Dkt. 74.]

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

**PLAINTIFFS AND COUNTER-DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

1

2

DATED:  March 23, 2015

**ROPERS, MAJESKI, KOHN & BENTLEY**

3

4

By: _/s/ Tahereh Mahmoudian_
STEPHEN J. ERIGERO
TAHEREH MAHMOUDIAN
Attorneys for Counter-Defendants
MJC AMERICA, LTD. DBA SOLEUS
INTERNATIONAL INC., MJC AMERICA
HOLDINGS CO., INC., MJC SUPPLY,
LLC, CHARLEY LOH, JIMMY LOH and
SIMON CHU

5

6

7

8

9

DATED:  March 23, 2015

**WINSTON & STRAWN LLP**

10

11

By: _/s/ Neal R. Marder_
NEAL R. MARDER
ALI R. RABBANI
IAN C. EISNER
Attorneys for Plaintiffs and Counter-
Defendants MJC America, Ltd. dba Soleus
International Inc.; MJC America Holdings
Co., Inc. and MJC Supply, LLC; and
Counter-Defendants Charley Loh, Jimmy
Loh, and Simon Chu

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles